PROVIDENT LIFE & ACCIDENT INS. CO. v. IVY.—73 S. W. (2d) 706.

Eastern Section. July 1, 1933.

Petition for Certiorari denied by Supreme Court, July 14, 1934.

Sizer, Chambliss & Sizer, of Chattanooga, for appellant insurance company.

J. A. Susong, of Greeneville, and Chas. S. Stephens, of Morristown, for appellee Ivy.

CROWNOVER, J.   This was a suit for rescission of an insurance contract and for the recovery of $3,750 which had already been paid under the policy.

The original and amended bills alleged three grounds for cancellation and recovery, to-wit: (1) Failure to disclose, in answer to question No. 11 of the application for insurance, that insured had been paid indemnity for a previous accident by two insurance companies other than the one stated in answer to said question; (2) failure to disclose, in answer to question 12, that said three insurance policies of defendant had been cancelled; (3) the disability of defendant for which payments had been made under the policy, was not within the terms of the policy, the policy containing a clause providing against loss of time "resulting without other contributing cause from the bodily injury . . . which is effected solely by the happening of a purely accidental event," whereas defendant's disability was contributed to by disease or the after effect of a previous accident.

Defendant answered denying all misrepresentations, and charged that complainant through its agent was fully advised of the facts relative to answers to questions Nos. 11 and 12, referring par-

ticularly to cancellation of policies and former injuries suffered in 1916; that said insurance company, having full knowledge of all the facts through its agent, was estopped to make the contention relied on relative to misrepresentations. He also filed a cross-bill seeking to recover the unpaid disability payments accruing under the policy and statutory penalty for refusal to pay.

The chancellor found and decreed as follows:

"The court further finds by preponderance of the evidence that on the date that the application was taken for the accident insurance policy in question, the defendant Ivy had fully recovered from the accident of 1916. That the accident of 1916 did not in any way contribute to defendant's injury of August 26, 1929. That the disability defendant suffered in 1929 and the disability which he has since suffered was not partly by disease nor from bodily disease had prior to the accident of 1929.

"The court finds that while the answer to question eleven does not recite all of the insurance companies in which defendant carried insurance, it does state that he drew compensation from one of said companies for the injury in 1916; that he had fully recovered therefrom.

"The court further finds that the answer to question twelve is not wholly correct, but that it is not wholly incorrect, however the policies terminated because of the accident of 1916, and the Provident Life & Accident Insurance Company was so advised on the date the application for the policy was made.

"The court further finds that while the answers to eleven and twelve in the application for insurance were not wholly correct, there was no intentional misrepresentation made by defendant to obtain any undue advantage or deceive the complainant in obtaining the accident policy.

"The two questions relative to the application, and the basis of the suit at bar are as follows:

" 'Q. 11. Have you ever claimed or received indemnity for any injury or illness? A. $400.00 T. P. A. Injury. Full Recovery.

" 'Q. 12. Has any accident or health or life insurance company or association ever rejected or postponed your application, cancelled your policy, or certificate, or declined to renew same? (If so state what company or association did it, when and why.) A. No.'

"1. 'The court is of the opinion that where a question in an application for insurance merely asks, as it does in question eleven in the application under consideration, to wit:

" 'Have you ever claimed or received indemnity for an injury or illness?'

"and applicant answers:

" '$400.00, T. P. A., Injury, Fully Recovered.'

"Although applicant had carried accident insurance in other companies in which he received indemnity for the same accident, the failure of applicant to state the other indemnities received for the same injury is not such a misrepresentation as will justify a rescission or cancellation of the insured policy, and this is especially true in the absence of intentional misrepresentation as is found in this case.

"2. The court is further of the opinion that where a question in an application for insurance is so framed that it would require several distinct answers, as in question twelve in the application in this cause, to-wit:

" 'Q. Has any accident or health or life insurance company or association ever rejected or postponed your application, cancelled your policy, or certificate, or declined to renew same? (If so, state what company or association did it, when and why.) A. No.' and the applicant's answer is true in part and untrue in part, it will not be construed as an incorrect answer or as a misrepresentation.

"If the misrepresentations of which the complainant insurance company complains were fully disclosed to its agent, prior to the taking of the application, and where the record further discloses that the whole matter terminated by reason of one accident, of which the company had knowledge, and since the defendant had fully recovered from the accident which terminated the policy, as disclosed in this record, the answer to question twelve becomes immaterial and the insurance company could not be heard to complain or permitted to cancel its contract with the insured.

"But if this were not true, the court is of the opinion that the knowledge and information which complainant received from the defendant through its agent, as well as on the face of the application, was direct knowledge of defendant's insurance and accident of 1916, and had this knowledge and information been pursued, it could have easily found out the condition of complainant's health in 1916 as well as the accident which occurred and the policies carried. Complainant company did not do this. It did not take advantage of the knowledge and information it had. This together with other attending facts and circumstances constitute an estoppel as against complainant's right to a rescission or cancellation of its policy as against the rights of defendant policy holder."

The chancellor decreed that defendant Ivy should recover of complainant insurance company the sum of $3,694.96, but denied the recovery of penalty.

Complainant appealed from said decree to this court, and has assigned errors, which are, in substance, as follows:

(1) The defendant, Ivy, should not recover, because he failed to carry the burden of establishing that he is disabled solely as the

result of the injuries received in the last fall after the policy was delivered in 1929.

(2) The defendant, Ivy, cannot recover because of misrepresentation as to payments of indemnity heretofore received in the year 1916 under other policies.

(3) The failure of the defendant, Ivy, to state in his application the facts concerning the cancellation of previous policies should warrant a rescission of the policy and a denial of recovery thereon.

(4) There is no estoppel in view of defendant Ivy's knowledge of the statements in the written application.

G. N. Ivy, of Morristown, was a traveling salesman. On October 19, 1927, he had just been employed to travel for the Duff Drug Company, of Chattanooga. He was at that time fifty-nine years of age. He had formerly been employed by Fritts & Wiehl, wholesale druggists in Chattanooga, but that company had ceased to do business, so he had not been traveling for several months, but had been on his farm near Morristown. While not employed he had let a small policy in the Provident Life & Accident Company, of Chattanooga, lapse. Some time during the day of October 19th he called the office of the Provident Life & Accident Company, in Chattanooga, and told them that he needed some insurance, and asked them to send a representative to call on him at his hotel that night. The insurance company sent C. M. Rogers, its agent, to call on him.

Eleven years prior to this, in 1916, Ivy had had policies in three traveling men's fraternal organizations, the United Commercial Travellers, the Travellers' Protective Association, and the Illinois Commercial Men's Association. On June 27, 1916, he fell from a stepladder onto a box, injuring the lower part of his back and spine. He suffered much pain in his back between his hips and at the extreme point of his spinal column. He was unable to work for about four months, but when he had recovered he went back to traveling. He filed claims against the three insurance companies and collected from each approximately $400. The three companies then canceled the insurance.

Ivy says he thought that each insurance company, after paying his claim, considered it a settlement of the policy. He didn't consider this cancellation of the policies, but settlement of them.

During the conversation with Rogers, Ivy informed him of the policy that he had had with the Provident, and that it had lapsed. He also told him about the three policies in the traveling men's fraternal organizations and the accident of 1916 and the settlements by the companies, and that the three companies after paying his claims had "dropped" him. Rogers replied that that was ten or eleven years before, and was out of date.

After this conversation Rogers sat down at a desk in the hotel lobby and filled out the application. Ivy signed it without reading it.

When Ivy received the policy a day or two later, he noticed in the application made a part of same that questions 11 and 12 were answered, "No." He returned the policy to the company, and wrote them a letter asking them to have the application filled out in accordance with the information he had given Rogers. He also wrote Rogers to that effect. The company returned the policy to him with the answers to questions 11 and 12, reading as follows:

"Q. 11. Have you ever claimed or received indemnity for any injury or illness? A. $400.00 T. P. A. Injury. Full Recovery.

"Q. 12. Has any accident or health or life insurance company or association ever rejected or postponed your application, cancelled your policy or certificate, or declined to renew the same? (If so, state what company or association did it, when and why.) A. No."

On receipt of the policy a second time Ivy did not examine it, but put it away without reading it. He paid the premiums up to August 26, 1929, when he received the injury complained of.

On August 26, 1931, he went to the feedroom on his farm to get some feed for his chickens. The floor was about two and one-half feet from the ground, with steps leading up to it. When he got the feed he turned around and caught the heel of his shoe in an old pan and skidded down the steps and fell backwards striking the small of his back across the doorsill. The blow was higher up on his back than the blow of 1916.

As the result of the accident he has spondylitis or injury of his spinal column, which prevents his walking except to a very limited extent. He is also very nervous, and even mental effort results in extreme nervousness. Dr. Mitchell testified that his injuries are permanent.

It is the contention of the insurance company that Ivy's present disability is the result of his accident of 1916 and a diseased condition caused by it, aggravated by his fall of 1929.

The policy contains a clause providing against loss of time "resulting without other contributing cause from bodily injury . . . which is effected solely by the happening of a purely accidental event . . ." and the following provision:

"This policy shall not cover injury resulting in any loss or disability caused wholly or partly by disease, or by bodily or mental infirmity or by bacterial infections."

Dr. Mitchell, who examined Ivy, testified as follows:

"Q. Well now, to get the matter clear, can you say definitely whether the arthritis that you found in Mr. Ivy's spinal column in November, 1929, was an infectious arthritis or a traumatic arthritis? A. No, sir, we cannot tell positively from the X-ray which one it was.

"Q. But in your judgment the arthritis that was found there was probably produced or set up by the 1916 fall, or started by it, and had been latent? A. I don't think that I can express a definite

opinion on that. I think it is probable that the 1916 injury may have had something to do with it, but I could not say positively whether it did or not.

"Q. You could not say positively? A. No, sir.

"Q. Assuming the state of facts set forth in the hypothetical question that I stated a while ago, what, in your opinion, is the pathological connection between Mr. Ivy's present condition and the 1916 injury? A. My opinion is that it is probable that the 1916 injury may have had something to do with the present symptoms, though I don't think that any one could say at the present time definitely whether it did or not. . . .

"Q. If Mr. Ivy had given you a history of a fall in 1916, injuring a point on the spine three or four inches from the tail-bone, and had told you it disabled him four months, and after another four months was not noticed, or seemed well, and then gave a history of a fall in 1929, when he struck the small of his back, which injury or fall would the infection or condition you found in November, 1929, be attributable to, in your opinion? A. From the examination in 1929, the fall received in August, 1929, was not responsible for the condition that we found present in the back, that is the hypertrophic changes. We therefore must assume that this hypertrophic condition was due to either an injury, or an infection which existed previously, although his symptoms—his pains and other symptoms, were attributable directly to the injury in 1929. . . .

"Q. . . . Now, doctor, to what would you attribute his disability, would you say it was the result of that old injury in 1916, or would you say it was the result of the injury on August 26, 1929, from that history of the case? A. I would have to assume that it was the result of the recent injury, the one prior to which he was all right, and following which he developed painful symptoms.

"Q. In other words, doctor, whatever may have been the condition of his spine as to latent arthritis, or tendency to arthritis I should say, prior to August 26, 1929, if he was at that time and previous to that time able to do his work, without noticing any inconvenience or any impairment whatever of his ability to work, and immediately thereafter he was disabled, and this condition developed that you observed in him, would there be much doubt what caused the disability, in your opinion. Do you get that? A. Yes.

"Q. Assuming that is true, would there be much doubt about what caused the disability? A. I think there would be no doubt in the mind of an average person. However, I think a physician encounters conditions of that kind so frequently he would want a little more careful examination before he stated definitely that the symptoms were entirely attributable to the injury."

The doctor goes on to testify that he had some latent arthritis which was possibly caused by the fall of 1916, and that most men of

his age have arthritis and spondylitis to some extent, many without knowing it, and he winds up by saying, ''I think it is reasonable to suppose that the disability is the result of the accident'' in 1929.

██ We are of the opinion that the chancellor was correct in finding that when the application for the policy in the Provident was made, Ivy had fully recovered from the accident and injury of 1916, and that the accident of 1916 did not contribute to his injury of 1929; that the disability he suffered in 1929 and has since suffered was not caused partly by disease prior to the accident.

Ivy testified that for a while after his fall in 1916 he felt a soreness in the extreme lower part of his spine, but it gradually went away, and he had no further trouble. For ten or eleven years afterwards he traveled as a salesman, driving an old Ford automobile over rough roads over Northern Alabama, North Georgia, and Middle Tennessee, driving himself. When not traveling he worked on his farm. He testified that he ''couldn't doubt'' but what he had fully recovered; that there had been nothing to cause him to suspect that he was not fully recovered.

Several of his friends and acquaintances testified that he had led an active life for the period of ten or eleven years between the two falls, and his physical condition had always appeared to be good.

''The establishment of such facts need not necessarily be confined to expert testimony.

'' 'A witness may state simple inferences drawn by him from his own conscious subjective sensations, as to his physical condition. Thus a witness has been allowed to state his physical symptoms; the pain which he suffered after an injury, how he suffered, and the extent of his suffering, by reason of a personal injury; the effect of injuries on his health, or of sickness or injuries on his ability to work; that after an accident he suffered from symptoms which he did not have prior to the accident; that he was troubled with nervousness; that he suffered from headaches in consequence of an injury to his back, etc.' 22 C. J., 618, sec. 710 (Telephone & Tel. Co. v. Carter, 1 Higgins (Tenn. Civ. App.), 750).

''And it has also been held that a witness may testify as to the physical condition of another person, where the witness details facts upon which he bases his judgment. 22 C. J., 618-622, sec. 711; Norton v. Moore, 3 Head, 480. And that it is not necessary to resort to expert testimony to prove such facts. Reed v. Rosenthal, 129 Or., 203, 276 Pac., 684, 63 A. L. R., 1071.'' L. & N. R. R. Co. v. Hadley and wife, 11 Tenn. App., 648, 649.

''The 'causes' referred to in a policy insuring against injuries sustained by accident 'independent of all other causes,' are the proximate or direct, not the remote, causes of death.'' Fetter v. Fidelity & Casualty Co., 174 Mo., 256, 73 S. W., 592, 61 L. R. A., 459, 97 Am. St. Rep., 560.

"The excitation by an accident of a dormant growth or formation within the body so that it rapidly results in death, which, but for the accident, would have been deferred until a later period of life, is within the operation of a policy insuring against bodily injury sustained through accidental means resulting directly, independently, and exclusively of all other causes in death." Fidelity & Casualty Co. v. Lillie Meyer, 106 Ark., 91, 152 S. W., 995, 44 L. R. A. (N. S.), 493; Rhoton v. Burton, 2 Tenn. App., 170.

Mr. Cooley, in his Briefs on Insurance (2 Ed.), vol. 6, p. 5351, thus announces the rule:

"So, in general, the mere fact that the insured was diseased at the time of the accident is not sufficient to render the exception operative, if the accident was in itself the independent and sufficient cause of death or injury."

The Tennessee courts have aligned themselves with this rule. Maness v. Life & Casualty Ins. Co., 161 Tenn., 41, 45, 28 S. W. (2d), 339, is directly in point in principle, as is also the case of McBurgess v. Fed. Life Ins. Co., 5 Tenn. App., 284, 287.

"As applied to contracts of accident insurance, the doctrine of proximate cause is clearly distinguished from its application to a case of ordinary negligence, the distinction being that in accident insurance contracts the liability is measured by the contract, and the doctrine of proximate cause is applicable only in determining whether or not an injury is caused solely by the act or accident against which indemnity is given, while in ordinary negligence cases the proximate cause determines the existence of the liability." McBurgess v. Fed. Life Ins. Co., supra.

The question of the burden of proof as to Ivy's injuries need not be discussed in view of Dr. Mitchell's statements that the 1929 injury must be considered the cause of his disability.

The second and third assignments of error are based upon the action of the chancellor in determining the effect of questions eleven and twelve of the application and answers of defendants thereto, as hereinabove quoted.

A misrepresentation about any matter of sufficient importance, in the opinion of the court, to naturally and reasonably influence the judgment of the insurer in making the contract, is a misrepresentation that increases the risk of loss within the sense of our statute (Code 1932, sec. 6126). Hughes Bros. & Aetna Ins. Co., 148 Tenn., 293, 301, 255 S. W., 363.

This was not such a misrepresentation that if the company had been informed about it they would not have issued the policy. It was informed by the statement in answer to question 11 that he had been injured in 1916; that the Travelers' Protective Association had paid him $400 indemnity; and that he had fully recovered. It did not refuse to issue a policy on being informed that he had had

an accident for which he was paid $400 by one company. To have been told that two more companies had paid him $400 each for the same accident should not have caused it to refuse to issue the policy. Failure to inform it of the other two companies did not increase the risk of loss.

■ If there is a partial disclosure, concealment cannot be predicated on the fact that the answer is not full, as it is the duty of the insurer to ask for further information, if not satisfied. 3 Cooley's Briefs on Insurance, 1978, and cases cited.

The insurer waived the incompleteness of the answer to the question by the issuance of the policy. Provident Life & Accident Insurance Co. v. Rimmer, 157 Tenn., 597, 601, 12 S. W. (2d), 365.

If any facts are known to the insurer which are sufficient to put him on inquiry, the inquiry must be followed up. 3 Cooley's Briefs on Insurance (2 Ed.), 1975.

■ We are of the opinion that questions 11 and 12, and answers thereto, taken together, were sufficient to put the company upon inquiry. What had become of the policy mentioned in the answer to question 11 should have been inquired into.

"The general rule is well stated in 18 Ann. Cas., 687, in a note to Damms v. Humboldt Fire Insurance Co., viz.:

" 'That where the insurer, at the time of the issuance of a policy of insurance, has knowledge of existing facts which, if insisted upon, would invalidate the contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts, and the insurer is estopped thereafter from asserting the breach of such conditions'—(citing many cases).

"It is held that the same rule applies where the agent soliciting the insurance knows of the existing facts, and such knowledge is imputable to the insurer. (Citing authorities.)

"The reason of the rule is stated in the same note in a quotation from Gurnett v. Atlas Mutual L. Insurance Co., 124 Iowa, 547, 100 N. W., 542, supra, thus:

" 'The law is charitable enough to assume, in the absence of any showing to the contrary, that an insurance company intends to execute a valid contract in return for the premium received; and when the policy contains a condition which renders it void at its inception, and this result is known to the insurer, it will be presumed to have intended to waive the condition, and to execute a binding contract, rather than to have deceived the insured into thinking his property is insured when it is not, and to have taken his money without consideration.'

"The question remains, however, whether a waiver or estoppel arises where the insurance company has information at the time which, if pursued with reasonable diligence, would lead to a discovery of the true state of facts regarding the health of the insured,

or other matter existing at the time upon which it is sought to base a forfeiture of the insurance, or a defense rested on some clause of the policy.

"We are of the opinion that, in such case, there is an estoppel." Life & Casualty Ins. Co. v. King, 137 Tenn., 701, 195 S. W., 585, 589.

"No general rule can be formulated which will govern in all cases the sufficiency of the facts or circumstances of notice that will put a party upon inquiry, but each case must rest on its own facts.

" 'Where such facts or circumstances are known to a person in relation to a matter in which he is interested as are sufficient to make it his duty as an honest and prudent man to inquire concerning the rights of other persons in the same matter, and the court of inquiry thus suggested would, if followed with due diligence, lead to a discovery of rights in conflict with his own, the general rule is that he will be held chargeable with notice of all that he might thus have discovered, and will not be heard to say that he did not actually know of the factor claim in question. Means of knowledge with the duty of using them are deemed equivalent to knowledge itself, and passive good faith will not serve to excuse wilful ignorance.' 21 Am. & Eng. Ency. of Law (2 Ed.), 584, 590 [Curry v. Williams (Tenn. Ch. App.), 38 S. W., 280, 281; Gibson's Sults in Chancery, secs. 65, 76.]

" 'But when from the uncontroverted facts in evidence it appears that circumstances existed of which the party sought to be charged had knowledge or information sufficient to affect his conscience, and thereby put him upon inquiry, which, if followed with reasonable diligence, would necessarily have led him to actual knowledge of the particular fact, and his failure to make the inquiry is not satisfactorily explained, he will be held chargeable with the knowledge which he might thus have acquired, and will not be allowed to say that he did not actually know that the fact existed. His knowledge of the circumstances being sufficient to make it his duty to inquire and to render any inaction on his part unconscientious, his failure to pursue the path of duty is no defense or excuse. Under such circumstances it is said that the presumption of notice is conclusive.' 21 Am. & Eng Ency. of Law (2 Ed.), 590 [Woodfolk v. Blount, 3 Hayw., 150, 9 Am. Dec., 736]." War Finance Corp. v. Ready, 2 Tenn. App., 67.

We are of the opinion that these two questions and answers taken together do not suggest an attempt at misrepresentation, but rather suggest that the application was incomplete and hurriedly filled out.

■ ■ The company cannot repudiate the fraud of its agent, and thus escape the obligations of its contract consummated thereby merely because the insured accepted in good faith the act of the agent without examination. Kister v. Lebanon Mutual Ins. Co., 128 Pa., 553, 18 Atl., 447, 5 L. R. A., 646, 15 Am. St. Rep., 699.

If Ivy stated the facts correctly, and Rodgers, the insurance agent, failed to fill out the application in accordance with the information given him by Ivy, and Ivy signed the same without reading it, it is competent to prove such facts. Insurance Co. v. Whitaker, 112 Tenn., 151, 79 S. W., 119, 64 L. R. A., 451, 105 Am. St. Rep., 916; Hale v. Sovereign Camp W. O. W., 143 Tenn., 567, 226 S. W., 1045; Moak v. Continental Casualty Co., 4 Tenn. App., 287.

As held in the case of Life & Casualty Co. v. King, supra, we are of the opinion that under the circumstances the insurance company is estopped as its agent knew all the facts when he filled out the application and the company is estopped to take advantage of the fact that Ivy failed to read it.

It results that all the assignments of error must be overruled and the decree of the chancellor affirmed. A decree will be entered in this court in favor of Ivy and against the insurance company and the surely on its appeal bond for $3,694.96, and interest thereon from September 19, 1932, to the present. The cost of the cause including the cost of the appeal is decreed against the complainant insurance company and the surety on its appeal bond. Faw, P. J., and DeWitt, J., concur.