PRUDENTIAL INS. CO. OF AMERICA *v.* GANG.

(*Knoxville,* September Term, 1946.)

Opinion filed November 30, 1946.

CHAMBLISS & CHAMBLISS, of Chattanooga, for plaintiff in error.

BERKE & FLEMING, of Chattanooga, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by the plaintiff to recover on two certificates, each for $2000, issued to him under a group policy covering employees of the Fire and Police Departments of the City of Chattanooga. Plaintiff alleged total disability. A verdict was found in his favor, which the trial judge approved. Judgment was entered accordingly, which judgment was affirmed by the Court of Appeals. We granted defendant Company's petition for *certiorari* and the case has been fully briefed and argued in this Court.

The particular provision of the certificates upon which the plaintiff bases his suit runs as follows:

"Total and Permanent Disability.—If the said employee, while less than sixty years of age, and while the insurance on the life of said employee under said Policy is in full force and effect, shall become totally and permanently disabled or physically or mentally incapacitated to such an extent that he or she by reason of such disability or incapacity is rendered wholly and permanently unable to perform any work for any kind of compensation of financial value, said amount of insurance will be paid to said employee. . . . "

For about twenty years prior to November, 1943, the plaintiff was an employee of the Police Department. He served in different capacities. For a number of years preceding November, 1943, he was a detective. At that time he was demoted to the rank of uniform patrolman, his compensation being decreased $25 a month. Thereupon the plaintiff, on account of the reduction in rank or conceiving himself physically unable to perform the duties of patrolman, applied for retirement. This privilege was granted him by the city authorities and he was retired and put on a pension.

Defendant insists there is no material evidence that plaintiff was totally and permanently disabled as that term is defined in his certificates under the group policy. This contention, of course, necessitates some consideration of the evidence. The evidence is in conflict but it is to be remembered that the jury accredited plaintiff's proof and conflicts must be resolved in his favor if the verdict is supported by material proof.

Plaintiff testified that he had been suffering with a heart ailment for three or four years before his retirement. That he was nervous, had shortness of breath, and was weak. That on a number of occasions he almost passed out while on duty. That he could not climb stairs nor was he capable of any violent physical exertion. At times while driving his car, he would have to grab his heart and slump over.

It appears that the detectives on this force generally work in pairs, using an automobile. Plaintiff said that he usually drove the car and that his ''buddy'' accompanying him would ordinarily leave him in the car, the former getting out when an arrest was to be made or other things done which required physical exertion. Three detectives who had worked with the plaintiff cor-

roborated this statement. They all testified that they tried to help him out and confirmed his evidence about frequent attacks, his inability to climb steps or physically exert himself. These ''buddies'' said that plaintiff was not lazy, tried to do his work, and did not complain to his superior officers.

It was further developed in plaintiff's evidence that he had to rest a part of each day in bed or on a davenette.

■ Plaintiff's physician was introduced, whose qualifications were admitted, and he said that plaintiff had a dilated heart and other infirmities which he described in more or less technical terms. The doctor thought that plaintiff was unable to do any work, at least without endangering his health, unless it was some work of a very light character. Evidently, from this doctor's testimony, plaintiff had a bad heart and quiet and rest were necessary for the preservation of his life. As a matter of fact, heart ailment is now so common if it be serious, that we may take judicial notice that rest and quiet are demanded if the victim is to survive.

■ The record shows that the plaintiff was frequently off on sick leave and it appears from the testimony of one of his superiors, a witness for defendant, that a reason for demoting plaintiff was his irregularity in reporting for duty.

Good feelings seems not to exist between the plaintiff and some of his superior officers and two of them testified that they saw nothing wrong with him and defendant likewise introduced a doctor who testified that he examined the plaintiff and found nothing particularly wrong with him. As said above, however, this conflict in the proof was a question for the jury to resolve.

Defendant Company submits the case as though the plaintiff were still a detective when he filed his claim for

total disability. It is then argued that the plaintiff had for some time, notwithstanding his afflictions, gone ahead with his work, drawn his salary, and accordingly received compensation of financial value. It is said that plaintiff's own testimony accordingly shows that he was not totally disabled as that term is defined in the certificate of insurance.

This argument ignores the fact that the plaintiff had been demoted from his position as detective and reduced to the rank of a uniform patrolman at the time he filed his claim for total disability. If the plaintiff was afflicted as he and his witnesses claim, and the jury believed he was, it is idle to argue that he could have performed the substantial duties of a uniform patrolman—"pound a beat," chase marauders, and exert the physical force often necessary in effecting arrests.

The plaintiff testified that he did not know of anything he could do in his present condition by way of earning a living. Accepting the proof offered by him, as we must, we do not think of any job open to a man of plaintiff's qualification which would permit him to work irregularly, lie down a good part of the day, and require no physical exertion.

Perhaps no question has been more frequently before the courts in recent years than what constitutes total disability under insurance policies like the one before us. The decisions are numerous, as reference to the textbooks and annotated cases will show. It is not necessary for us, however, to attempt a review of the various authorities for this particular matter has been considered by this Court in a number of late cases.

One of our earlier cases is *Pacific Mutual Life Ins. Co.* v. *McCrary,* 161 Tenn. 389, 32 S. W. (2d) 1052, in which the policy defined total disability very much as it is

defined in the certificate before us. That case was really disposed of as though an occupational policy was involved. The plaintiff had stated his occupation as physician and farmer. It was conceded that he was disabled from functioning as a doctor but it was urged that he was still conducting farming operations and there was no liability under the policy. This Court concluded that he was not conducting farming operations, not even performing the duties of supervision, and that he was totally disabled and entitled to recovery on the policy. It was not contended there that there was other compensatory work available to the plaintiff. Such contention could scarcely have been made for the plaintiff was confined to the house.

In *Prudential Ins. Co. of America* v. *Davis*, 18 Tenn. App. 413, 78 S. W. (2d) 358, 365, this identical policy or certificate was before our courts and Judge FAW, in an elaborate and carefully prepared opinion, noted this:

"Under the contract on which plaintiff is suing, proof that plaintiff is totally disabled from the prosecution of his usual employment as a railroad brakeman is not sufficient. His disability must be such as to render him wholly and continuously unable to peform any work for any kind of compensation of financial value."

Petition for *certiorari* was denied by this Court in the case just mentioned and shortly thereafter *Principi* v. *Columbian Mutual Life Ins. Co.*, 169 Tenn. 276, 84 S. W. (2d) 587, 590, was before this Court. In this case the Company's liability for total disability was limited very much to the same extent as such liability is limited herein. Justice McKINNEY reviewed the authorities at some length and said:

"The two following rules for determining liability are applicable:

"First, as a condition of recovery, it must appear that the insured is incapacitated to earn, not only in his chosen or previously formed occupation, but in any other to which he may be reasonably fitted.

"Second, to defeat recovery on the ground of earning capacity, it must appear that the remaining capacity to earn, despite disability, is a capacity to earn substantially. No scintilla rule applies. The earning capacity remaining must bear some reasonable relation to the natural or previous capacity to earn, against loss of which it is the purpose of the policy contract to insure."

The language just set out was quoted and approved, although not available to insured under the facts of that case, by Justice CHAMBLISS in *Patton* v. *Prudential Ins. Co. of America,* 181 Tenn. 138, 178 S. W. (2d) 760. It was applied to a policy of insurance issued by this defendant containing the identical language respecting total disability as the policy here.

Now to apply the rule stated in the *Principi Case.* Does plaintiff's capacity to earn, despite disability, amount to a capacity to earn substantially? It is, of course, possible that he might obtain some part-time job involving light work, no exertion, with freedom to rest part of each day and lay off when he felt badly. This, however, is all theoretical. Such jobs must be very scarce, if they exist, and plaintiff testified that he knew of nothing of the kind open to him.

Plaintiff's retirement and pension by the City goes to show that he could not perform the duties of a uniform patrolman. His demotion prevents him from further performing the duties of a detective where he had a "buddy" to do such of the work as required physical exertion and there is no indication on the record of any job available to plaintiff, the duties of which he could perform in the

condition he was found to be by the jury that heard the evidence.

We think there is material evidence in the record from which the jury might well have concluded that plaintiff was disabled to perform, without hazard to his life, any available work for which he was reasonably fitted and from which he could have received compensation of substantial financial value.

The judgment of the Court of Appeals is affirmed.