PEARL WALLACE WARD, Petitioner,

*v.*

COMMERCIAL INSURANCE COMPANY and FAIRCLOTH
CHEVROLET COMPANY, Defendants.

372 S. W. 2d 292

(*Knoxville,* September Term, 1963.)

Opinion filed October 11, 1963.

ROBERT E. BANKS and JACK R. MUSICK, Elizabethton,
STREET, BANKS, MERRYMAN & MUSICK, Elizabethton, of
counsel, for petitioner.

Simmonds, Bowman & Herndon, Johnson City, for defendants.·

Mr. Justice White delivered the opinion of the Court.

This is a workmen's compensation case in which Mrs. Ward alleges that her husband's death occurred on June 25, 1962, as the result of a heart attack which grew out of and in the course of his employment, and that the same was accidental in nature. The deceased was an automobile salesman in the employ of Faircloth Chevrolet Company.

The bill alleged that Mrs. Ward's husband had a history of heart trouble commmencing in 1947 and carried medicine under the doctor's orders at all times, and that the employer was aware of these facts. It alleged that Mr. Ward had been required to work from eight to six, and every other day until nine at night. It alleged that Mr. Ward "worked long hours, was constantly moving about, standing on his feet, and in great strain * * *." "* * * on Monday, June 25, 1962, about 10:00 o'clock, A.M., * * * he had just completed the sale of an auto-

mobile to a customer, and was in the process of dealing with another customer, when he had a heart attack on the premises of Faircloth Chevrolet Company in Johnson City, Tennessee, and died on the premises shortly thereafter.''

The defendant's answer admitted that Ward died of a heart attack in the course of his employment, but denied that it arose out of the employment. The answer denied that the deceased had been engaged in any work which required any strain or exertion and further denied that his heart attack was in any way connected with his work or was accidental in nature.

Upon completion of the proof the chancellor, in a memorandum opinion, found in favor of the petitioner and awarded to her and her minor child, a daughter of the deceased, full compensation benefits. A motion for a new trial being overruled, the defendants perfected their appeal to this Court and complain that the trial court committed error ''in holding that James Edward Ward died as a result of an attack arising out of and in the course of his employment''; and that the court erred ''in finding that there was material evidence to support an award of death benefits under the Workmen's Compensation Act''.

In order to prepare the opinion in this case, it is necessary to recite the facts as established in the trial court. Mr. Ward had a history of heart trouble dating back to 1947, at which time he suffered a coronary occlusion and a definite myocardial infarction substantiated by electrocardiograms taken at the time. His wife testified that for two months before his death he had been suffering chest pains, which the heart specialist, Dr.

Wofford, diagnosed as angina pectoris. He stated that these were often associated with coronary occlusions and myocardial infarction.

Dr. Wofford said that he first saw the deceased on June 13, 1962 in the emergency room at the hospital in connection with an attack of angina. He testified that through an electrocardiogram on June 14, 1962 his diagnosis that Mr. Ward had suffered a coronary occlusion causing severe damage to the heart muscle was verified. He said that he had given him several types of medication which he hoped would relieve his condition and: ·

"Even the first time that I saw Mr. Ward I advised him to stay away from work altogether, to see whether or not the medicines which I had given him would relieve him of his pain, and I also advised him, particularly on the last occasion (June 22, 1962) that if he wasn't relieved adequately that in a very short time that it would probably be best for him to enter the hospital for probable institution of a little more intensive type of treatment."

When Dr. Wofford was questioned on direct examination about the causal connection between Mr. Ward's activities in the course of his employment and his heart attack, he responded:

"As to the possibility of its causing the attack, there is a possibility that it initiated an attack of angina. Whether or not any of these conditions actually could be determined the cause of it is almost impossible to say. The preexisting condition was there. Mr. Ward had trouble with his coronary blood vessels obviously because of his past history of a coronary occlusion and because of the electrocardiographic changes which

I found, and because of his history of angina, but as to whether or not, as to whether the exertion or emotional factors connected with his selling a car or connected with the anticipation of selling another car, whether or not that actually caused any of his trouble is almost impossible to say. * * * I didn't make any definite statement that yes, it is definitely a cause, because there is no way you can prove definitely that any of those factors could be a cause of his attack."

And later to the question "Doctor, is it possible that physical exertion can precipitate or bring on a heart attack?", he answered: "Yes, sir, it is entirely possible." And continuing:

"Q. And in the condition that this man was in, would you say that it is entirely possible that what he did on that occasion, in the way of exertion, could have brought on or precipitated the fatal heart seizure?

"A. Under those circumstances, his exertion could have precipitated an attack."

And on cross-examination he was asked:

"Q. Did you recommend that he be hospitalized the first time?

"A. No, sir. I recommended that he stay quiet at home, after I gave him a choice of the two procedures, the two courses. I suggested hospitalization, and as an alternative absolute quiet at home to see whether the medicine and whether the reduction in activity would reduce his pain.

* * * * * *

"Q. You previously testified that exertion that he might have done a few hours at his place of employ-

ment in selling automobiles could have precipitated the final attack or final event, isn't it also true that that could have just as well have occurred spontaneously unconnected with any exertion?

"A. Yes, sir."

A fellow employee, Floyd Rupe, testified concerning the general conditions of Mr. Ward's employment and the specific activities and conditions on the morning that he suffered the fatal attack. He said that the salesmen worked from eight to six, and eight to nine on alternate days; that the job entailed standing a great deal and demonstrating, selling, closing and doing the paper work connected with selling automobiles, and sometimes putting the tags on the auto sold. He pointed out that because the salesmen were on a commission basis there was a good deal of worry about making sales. He said that it was common knowledge that Mr. Ward had a heart condition and carried medicine at all times.

Mr. Rupe testified that on the morning in question the deceased attended a sales meeting at eight o'clock, and by ten o'clock when the attack occurred he had already sold one automobile and was in the process of working on another. He said:

"When you have two good sales going where a man, we are just average people, when you have two good sales going there is quite a bit of excitement and quite a bit of hustling around for it. You just don't have that good luck all the time * * *."

He said that at about ten o'clock he saw Mr. Ward doing something on the top of a car and that he suddenly stiffened, staggered backwards and fell. He rushed over

and found that Mr. Ward had fallen so hard on the concrete that he split the back of his scalp and was bleeding from the wound. He related that he attempted to get a nitroglycerin pill down the man's throat but failed.

Another salesman named Wagner testified as to the same things and sustained what Mr. Rupe had said:

"Mr. Ward, what I seen, he had taken the dealer tag off the car, had pulled it under the shed and up in the end and he had bent over and took the dealer tag off. He turned around and he had come back to this car where I seen him when he was standing there when he walked up to it, and he laid the dealer tag up on top of the automobile that was there, and he just took maybe a couple of steps back, about by the side of the car fender and he was just more or less like he was straightening up, he just looked like he, he just got real stiff and that was it. He just fell just as hard as he could fall. I mean, if you had stood up, the way I would illustrate it, if you would stand up a yardstick you couldn't have knocked it down any faster and harder than the man fell."

The death certificate showed that the deceased died of a coronary occlusion and stated that death occurred within five minutes of the onset.

Mrs. Ward said that her husband often came home very tired and worn out from the long hours and worry and strain of his employment as a salesman. She also testified that he had some trouble sleeping nights because of pains in his chest.

The defendants offered no proof.

The appellants, defendants below, make two assignments of error. The first is that it was error to hold

that Mr. Ward died of a heart attack arising out of his employment, and the second that there was no material evidence to support the chancellor's award.

In regard to the causal connection between the deceased's employment and the fatal heart attack the chancellor said:

"It is true that what the deceased, James Edward Ward, was doing at Ten A.M. on the 25th day of June, 1962, might not affect some individuals seriously but in the condition that James Ward was in at the time it did affect him seriously and did bring about, in the opinion of this Court, his death and aggravated and brought on the heart attack which caused his death. The Court is of the opinion that there is a direct causal relationship between the condition at the time of his death which was brought about as a result of his employment which later culminated in his rather sudden death.

\* \* \* \* \* \*

"It is considered to be law in the State of Tennessee as a proposition of law that an employee who dies in the course of his employment as a result of a heart attack, although suffering from a previous heart disease, is covered under the Workmen's Compensation Act, even if the results were produced by ordinary exertion and the usual strain of the work. The Court is of the opinion that the record in this case sustains the proposition of more than ordinary exertion. On the contrary the building up, the mental strain and the excitement, and the pressure brought about by working long hours, by working twelve and thirteen hours a day and by pushing the job, as the evidence

shows, on that morning that there was unusual activity so as to aggravate and cause excitement to the deceased, James Ward,

\* \* \* \* \* \*

"In this case the competent heart specialist advised James Ward not to return to his work and therefore when he did return to his work the Court is of the opinion that the medical testimony corroborates and substantiates the theory of the Complainant in this cause. \* \* \* that his heart condition was aggravated as a result of his employment, and the anxiety and the work of long hours of exertion, which he had gone through for several days and weeks preceding his death, and that it is within the meaning of the Compensation Laws of this State, and the Court is of the opinion that it is compensable. \* \* \* Therefore, the Court holds that his widow is entitled to a recovery. \* \* \*,,

In the case of *Coleman v. Coker*, 204 Tenn. 310, 312, 313, 321 S.W.2d 540, 541 (1958) this Court, in an opinion written by Mr. Chief Justice Burnett, held that this Court:

"\* \* \* is committed to the proposition of law that an employee who dies in the course of his employment as a result of a heart attack, although suffering from a previous heart disease, is covered under the Workmen's Compensation Act even if the result was produced by ordinary exertion and usual strain of the work."

\* \* \* \* \* \*

"(I)f the physical activity and exertion of an employee's work aggravates a pre-existing heart condi-

tion, precipitates the fatal heart attack, and thus hastens his death, such death is the result of accident arising out of and in the course of the employment within the meaning of our Workmen's Compensation Law. *Patterson Transfer Co. v. Lewis,* 195 Tenn. 474, 260 S.W.2d 182; *Heron v. Girdley,* 198 Tenn. 110, 277 S.W.2d 402; *Cambria Coal Co. v. Ault,* 166 Tenn. 567, 64 S.W.2d 18; *Lucey Boiler & Mfg. Corp. v. Hicks,* 188 Tenn. 700, 222 S.W.2d 19.''

Mr. Justice Swepston writing for the Court in *Nashville Pure Milk Co. v. Rychen,* 204 Tenn. 575, 579, 322 S.W.2d 432, 434-435 (1958), said:

''Counsel for appellant seems to have pitched his case on the idea that there must have been some unusual occurrence or activity or exertion beyond the scope of the deceased's ordinary employment activities in order for the death to be compensable. We think this is a misapprehension of our cases. The question is succinctly stated in *Patterson Transfer Co. v. Lewis,* 195 Tenn. 474, 478, 260 S.W.2d 182, 184, as follows:

'' 'If an ordinary exertion or usual strain produces an unusual result, is the resulting injury by accident?'

''The answers immediately fellows:

'' 'It is now well established that ordinary and usual exertion at work resulting in injuries, is compensable.' ''

The Court also said in *Coleman v. Coker,* supra:

''We long ago likewise adopted the rule (a very salutary one) that the employer takes the employee as he finds him when he employs him. This Court in *Swift*

*& Co. v. Howard,* 186 Tenn. 584, 212 S.W.2d 388, 391, said:

> " 'When an employer employs a workman and takes him as he is and assumes the risk of having a weakened condition aggravated by some injury which might not hurt or bother a perfectly normal, healthy person. If the injury is the proximate cause of the disability, i. e., excites and aggravates a previous weakened condition then the employer is liable.' "

■ These cases, supported by many more, resolve the question of law as to whether a death resulting from a heart attack in the course of employment *can be* compensable *as arising out of* the employment.

These cases and many more also make it clear that in each case there is a question of fact which must be resolved by the trial court, to-wit: whether there actually was a causal connection between the heart attack and the employment.

Mr. Justice Dyer made it very clear that in our review of the evidence on appeal we are required to take the evidence most favorable to the prevailing party below in a workmen's compensation case. *City of Gallatin v. Anderson,* 209 Tenn. 392, 394, 354 S.W.2d 84, 85 (1962); *Johnson v. Anderson,* 188 Tenn. 194, 196, 217 S.W.2d 939, 940 (1949).

Mr. Justice Gailor in *Anderson v. Volz Const. Co.,* 183 Tenn. 169, 173, 191 S.W.2d 436, 438 (1946), said:

"On appeal under the Workmen's Compensation Act, we do not reweigh the evidence, but search the record only so far as is necessary to determine that there

is material evidence to support the finding of the trial judge.''

There are many more cases supporting this proposition listed under note 39 after T.C.A. sec. 50-1018 and many more under the same note in the 1963 Supplement to that section.

In *White v. Whiteway Pharmacy, Inc.*, 210 Tenn. 449, 454, 360 S.W.2d 12, 15 (1962), this Court stated that in a workmen's compensation case:

"(F)indings of fact of the trial court will not be disturbed on appeal if supported by any material evidence and this is true even though the preponderance of the evidence is against the finding of the trial court. *Vester Gas Range & Mfg. Co. v. Leonard*, 148 Tenn. 665, 257 S.W. 395; *Brady v. Reed*, 186 Tenn. 556, 212 S.W.2d 378; *Graybeal v. Smith*, 189 Tenn. 412, 225 S.W.2d 556.''

Mr. Chief Justice Neil in *Tapp v. Tapp*, 192 Tenn. 1, 4-6, 236 S.W.2d 977, 978 (1951), made several observations which serve as a useful guide to trial judges in resolving the factual issues in cases under the Workmen's Compensation Act like the instant one. He pointed out that reasoning by way of analogy in borderline cases on the issue of ''arising out of'' the employment, serves no useful purpose and adds nothing to the law. He said that the Act should be liberally construed to secure the beneficiaries every protection which it authorizes, resolving any reasonable doubt as to whether the act or injury arose out of the employment, in favor of the employee whenever rationally possible. He said that the causal connection which the petitioner must prove ''is meant not proximate cause as used in the law of

negligence, but cause in the sense that the accident had its origin in the hazards to which the employment exposed the employee while doing his work.''

It would be a misinterpretation of these statements to hold that they were meant to effect the scope of this Court's review of the evidence. Our review continues to be only a review of the record to see if the chancellor's decision is supported by any material evidence. Mr. Chief Justice Neil made this clear in *Sandlin v. Gentry*, 201 Tenn. 509, 517, 300 S.W.2d 897, 900-901 (1957), when he held:

"While it is the duty of the Court to liberally construe the compensation statute we cannot overlook the finding of facts by the Chancellor, and reach a contrary conclusion under the guise of liberality of construction.

\*　　\*　　\*　　\*　　\*　　\*

"While it is held in *Tapp v. Tapp,* \* \* \* that the Court must construe the language of the statute, such as 'out of', liberally we can do so only when it is 'rationally possible' \* \* \*.''

What we have said above means that our review in the instant case is limited to an examination of the record to see if there is any material evidence to support the chancellor's finding that there was a causal connection between Mr. Ward's employment and his fatal heart attack.

The evidence, reviewed in this manner, poses the peculiarly perplexing definitional question of whether the medical testimony in this record is "material evidence".

The appellant states in his brief, at page 14:

"(I)t is only in a very rare instance that a doctor can positively say the employment could not have had any connection whatsoever in the death. (Or that the employment definitely did cause the death.) The great majority of cases are just like this one, where the medical profession is unable to say with any degree of certainty whether the work had anything to do with the fatal seizure or not. (our parenthetical.)"

2 Larsen, Workmen's Compensation 322-323 (1961) puts this problem in its proper perspective:

"It is a common experience of compensation and personal injury lawyers to find that the more distinguished a medical witness is, the more tentative and qualified are his statements on the witness stand. He will testify that a sledge hammer blow on claimant's head might well have caused claimant's headache, but hesitates to say positively that this was the only possible cause, and may concede on cross-examination that there could conceivably be other causes. The weight of such testimony, however, should not be too sharply discounted because of the disposition of the highly-trained scientific mind to refrain from unqualified statements of opinions on such matters as causation.

"The sort of thing that a too-literal approach to the wording of medical testimony ends in may be seen from the present South Carolina rule. Here even 'probably' and 'likely' are not strong enough, but the court has indicated that it will be satisfied with phrases such as 'more than likely' or 'more than probable' because these indicate 'a greater degree of certainty.' It may indeed be questioned whether awards should stand or fall according to whether the medical witness

happened to choose a phrase which meets a requirement based on such subtle graduations.''

In the case of *Boyd v. Young,* 193 Tenn. 272, 246 S.W. 2d 10 (1951), there was involved the issue of the causal connection between the employment and a cancer which ultimately had caused the death of an employee. In reviewing the record for material evidence to support the chancellor's award of compensation under the Act, Mr. Chief Justice Neil said:

"We think there is material evidence to support the conclusion of the trial court, conceding that the medical experts were in agreement that no one knows the cause of cancer.'' 193 Tenn. at 276, 246 S.W.2d at 11.

Mr. Justice Tomlinson, in *Lynch v. La Rue,* 198 Tenn. 101, 278 S.W.2d 85 (1954), said:

"(A)n award cannot be predicated solely upon the testimony of medical experts who are not willing to go any further than to say that it 'is possible' or 'could be' that there is a causal connection between the accident and the injury for which compensation is sought. However, such testimony is not entirely without value if there be other evidence from which the trial judge may reasonably infer that the injury did result from the accident that the experts say 'could be' the cause of the injury." 198 Tenn. at 104, 278 S.W.2d at 86.

The Court also held in that case:

"(I)f the findings of the trial judge are supported by inferences which may reasonably be had from the evidence, though that evidence be reasonably capable of

opposing inferences, a reviewing court will not disturb those findings.'' 198 Tenn. at 106, 278 S.W.2d at 87.

The Court in upholding the compensation award (in these terms) noted that neither medical witness was willing to express an opinion that there was a definite causal connection between the 1945 accident and brain disease discovered in 1952.

This language and rationale was again approved by this Court in *Morrison v. James,* 201 Tenn. 243, 245, 298 S.W.2d 714, 715 (1957), in which we upheld a trial judge's award in a workmen's compensation case as being supported by material evidence.

In *Combustion Engineering Co. v. Blanks,* 210 Tenn. 233, 238, 357 S.W.2d 625, 627 (1962), we said:

''That an expert's opinion that a certain accident 'could or might' produce the injury for which Workmen's Compensation is sought is competent is so well established by numerous cases as to seem to make it pedantic to cite authorities in support of the admissibility of such evidence. * * * It would be idle to cite other decisions in support of this well established principle of law.

In the instant case Dr. Wofford, the heart specialist who had treated Mr. Ward for several weeks prior to his death, testified that he had told Mr. Ward to stay away from work and to remain completely quiet at home. At the same time he also testified that he could not say with any degree of medical certainty that there was a definite causal connection with the particular activities on the morning in question in the course of his employment and the fatal heart attack. The logical inference

from his testimony is that he would not have told the deceased to stay away from his work if he thought it would not hurt him. His testimony, while manifesting the cautious tendencies which we have discussed, is still material evidence, from which a conclusion could be drawn in favor of the petitioner when coupled with the other testimony in the record.

Indeed, Mr. Chief Justice Green once took judicial notice that rest and quiet are demanded if a victim of a serious heart ailment is to survive. *Prudential Ins. Co. of America v. Gang,* 184 Tenn. 188, 191, 197 S.W.2d 806, 807 (1946).

As Mr. Chief Justice Neil said in *Cunningham v. Hembree,* 195 Tenn. 107, 115, 257 S.W.2d 12, 15 (1953), this is another borderline case where the chancellor obviously followed our guide in *Tapp v. Tapp,* supra, that "[a]ny reasonable doubt as to whether the act or injury of the employee arose out of the employment should be resolved in favor of the employee or dependent."

Since we have found there is material evidence in the record to support the chancellor's award, we must affirm at the cost of the appellants. This case is affirmed and remanded for the entry of all orders and decrees necessary to the enforcement of this opinion.

BURNETT, CHIEF JUSTICE, DYER and HOLMES, JUSTICES, and CLEMENT, SPECIAL JUSTICE, concur.