MARTHA WHITE BAKERIES, INC., Plaintiff in Error,

*v.*

JOE A. VANCE, Defendant in Error.

(*Nashville,* December Term, 1958.)

Opinion filed March 12, 1959.

WILEY J. HOLLOWAY, Murfreesboro, for plaintiff in error.

JAMES W. BUCKNER, Murfreesboro, for defendant in error.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

This is a Workmen's Compensation case in which the trial judge made an award in favor of the employee, Joe A. Vance, of permanent partial disability of 75% to his whole body, from which judgment the employer appeals. There are two assignments of error: (1) that there is no material evidence to support the verdict; and (2) no evidence to support the verdict in regard to the award of 75% permanent partial disability.

The real question is whether or not there is any evidence of causal connection between the disability and the employment. The accident occurred on January 30, 1957, about 9:00 o'clock in the morning. Petitioner's employment consisted of loading employer's truck in Murfreesboro with bakery goods and running a route in or near Fayetteville, Tennessee. On this morning while working his route, some of the wooden bread trays fell over in the truck and while he was in the act of straightening same his foot was caught causing him to fall to the floor of the truck, strike his back on one of the trays and then to fall backwards out of the truck and land on the ground with considerable force. Petitioner was 32 years of age, has a wife and two minor children, and has been a commercial truck driver during his adult life; his weight was 225 lbs.; height 6' 7½" and so far as he and his family physican knew, he was in good health. Very shortly following this accident, however, it transpired that petitioner was afflicted with the disease of cirrhosis of the liver, the origin of which was in no way connected with the accident.

The petitioner testified that immediately after the accident he commenced to suffer back pain and that before seeing Dr. Carl Adams, his long-time family physician, on the evening of that same day, he began to experience some swelling of his feet, legs and other extremities in addition to his back pain; that he had never before in his lifetime experienced this type of pain or of any swelling of his feet and legs or other extremities; that at this same time he did not experience any pain in his abdomen. But when he consulted Dr. Adams, he complained of back pain, pain in the abdomen, and a mass in the right groin; he received treatment from Dr. Adams but the swelling of the members and the pain kept hurting and in fact, got worse, so that after four or five days he was taken to the hospital for further treatment and he was confined there for about ten days. After his release from the hospital the same trouble continued and he was eventually taken to the hospital a second time, where he was operated on for a hernia. Even after that operation, the back pains continued and had not improved up to the time of the trial and he has had to take medicine to ease the pain continually.

Subsequent to Dr. Adams' treatment, petitioner underwent further medical examinations at the Vanderbilt Hospital in Nashville at the request of the employer. In the course of same, he was hospitalized twice, underwent surgery for the removal of his spleen and received approximately 34 pints of blood by transfusions.

Since that time petitioner has not been able to engage in any sort of employment. Petitioner was asked what he believed to be the cause of the deterioration of his physical condition from what it was before the accident

to which it became afterwards, he answered: "Well, the fall that I got."

He further testified that he was 100% disabled. At another point he was asked and answered as follows:

"Q. Do you think that cirrhosis of the liver might have been—you said that you think this fall is what caused your present physical condition. Don't you think that cirrhosis of the liver has a whole lot to do with the way you feel now?

"A. Well, it may do it. It may have a whole lot to do with it but I feel that the fall caused my cirrhosis to flare up like it did."

Dr. Adams testified that he felt that on April 26, 1957, the petitioner had recovered from his injuries and that his present problem was primarily the cirrhosis of the liver.

On direct examination he was asked whether in his opinion the fall aggravated or accelerated his pre-existing cirrhosis. He stated that he did not know. Prior to the statement, however, the following had occurred:

"Q. Gladly. In the total absence of trauma, is it normal or usual that portal cirrhosis of the liver will flare up suddenly and critically and for the spleen suddenly to become abnormal and greatly enlarged so as to cause surgical removal? A. By the use of the word 'trauma', what do you mean?

"Q. I mean any blow, any impact of any kind. A. You mean any injury, as we think of injury—accidental trauma?

"Q. I don't have in mind necessarily tearing the flesh. What I have in mind is any impact, any force suddenly and sharply applied to the organ. A. Yes, I think cirrhosis might flare up at any time, or the symtoms from cirrhosis. I don't think it requires that some insult be administered to the body for it to flare up.

"Q. Well, on the same question, I will emphasize the words 'normal' or 'usual'. Is it normal or usual for that to happen, for the progression of cirrhosis to be sudden, extremely sudden, to make itself suddenly known? A. I would like to answer that general concept in this way, that the problem of cirrhosis of the liver is one of the scarring and lessening the amount of liver substance that is left for the use of the body in the various functions of the liver. If any insult is added to the body, whether it be accidental trauma or whether it be a severe infection, one can presume that the load of the liver is increased in some respects. And would one presume that if the liver is placed under an increased load, it would be more apt to reach its maximum ability to perform sooner than it would under normal or resting conditions when nothing had happened. Is that the general problem that you wanted brought forward?

"Q. Will you state whether, in your professional opinion, it is possible and even normal and reasonable that a severe trauma or jolt or fall can precipitate a crisis of portal cirrhosis of the liver, aggravate it, accelerate it, and cause it to become more active and critical and disabling than it would if no trauma had occurred? Is this reasonable? A. It is my humble

opinion that any process which adds any increase or abnormal amount of stress or strain to the functions of the body, of which the liver is an integral part, would cause an increased load on it, and if the liver is using its maximum ability to perform under normal circumstances, then one would have to assume that when the circumstances are changed so that the demands are increased on it, that something would have to give. In other words, a point will be reached somewhere that the demands on the liver will be more than it will be able to perform. Now this is brought out by patients with pneumonia who go along very well until they get a very severe infection and then one will have difficulty keeping them out of serious complications.

\*　　\*　　\*　　\*　　\*　　\*

"A. That they occurred simultaneously.

"Q. That might have been just a circumstance and also might have been some indication, you don't know? A. I have no way of knowing.

"Q. In other words, the proximity of the cirrhosis of the liver and of the accident itself is but a circumstance, and when you say that they happened closely together, that is only a circumstance which you take into consideration? A. Yes, I would think that would be a way of putting it. Of course, from my point of view, the way it occurred was that this man began to call me about all these things that were bothering him following an accident.

"Q. Well, as I say, the accident might have been a circumstance and it might have precipitated it. You don't know. A. Correct.

"Q. And you are not testifying that it did and you are not testifying that it didn't. You just don't know. A. I'm not in any position to know which * * *"

Again, a letter was written on April 9, 1957, by Dr. Adams to the insurer, the last paragraph of which reads as follows:

"It is not possible to connect, in any way, the origin of the Portal Cirrhosis with the injury; however, it is possible that the injury precipitated a crisis of the Portal Cirrhosis and caused the symptoms of Cirrhosis to become manifested for the first time."

Dr. Thomasson was one of the two doctors who examined the petitioner for employer and it is true that in his opinion the fall had nothing to do with the causation or aggravation of the cirrhosis of the liver. However, after testifying that many of these cases do become suddenly worse for no reason at all he was asked and answered as follows:

"Now, Doctor, based on the same assumption that Joe Vance had a relatively dormant condition which did not make itself known to him, can you offer any explanation whatever to suggest why suddenly, after this accident, he should begin to have the trouble other than the fall?

"A. I can not offer any explanation for it. No.

\* \* \* \* \* \*

"Q. Which, once again, gets back to the logical condition that, in logic, it would appear there was probably some connection. In other words, are not the times too close?

"A. From the time element, circumstantial evidence is in favor of it."

This doctor was then asked about a condition where a person's liver is already heavily loaded, to which he answered, "Any stress that the patient undergoes might tip the scales." Then he was asked:

"Now, isn't it entirely possible that this extra strain was placed upon Joe Vance's organs, all of his organs, his liver as well as his other organs, by sustaining this severe jolt?

"A. It is."

At another point, the doctor was asked whether this is a usual case, to which he answered, "No, it is not."

The trial judge, in part, made this finding:

"Taking into consideration the developments immediately after the accident, it seems to me that it is but fair to relate petitioner's present physical condition to the injury he received in the accident. Perhaps it is true, or a rational conclusion could be drawn to that effect, that he would have become disabled at some future time without sustaining an injury, but no one knows when that would have occurred. To fix a time when the disease without an injury would have disabled him would be mere conjecture.

"I am of the opinion that the fall from the truck was the spark that set in motion the elements of destruction, and this being so the petitioner is entitled to compensation."

We do not think it necessary to cite and discuss any of the authorities as the principles are rather well under-

stood but we feel satisfied that there is substantial evidence to support the findings of the trial judge and that it establishes the necessary causal connection between the injury and the employment. The case is quite similar to *McCann Steel Co. v. Carney,* 192 Tenn. 94, 101, 237 S.W.2d 942, to which reference is particularly made on the question of causation.

The judgment below is affirmed.