Combustion Engineering Company, Inc.

*v.*

Willie Blanks.

357 S.W.2d 625.

(*Knoxville,* September Term, 1961.)

Opinion filed February 8, 1962.

Petition for Rehearing Denied June 5, 1962.

GEARINGER, BANKS & HUTCHESON, Chattanooga, for petitioner.

CAMPBELL & CAMPBELL, Chattanooga, for respondent.

MR. JUSTICE WHITE delivered the opinion of the Court.

From an award to Blanks against his employer, Combustion Engineering Company, for injuries alleged to have been received while doing work for employer, it has appealed, on the theory that the case does not fall within the Workmen's Compensation Law. Blanks also appeals.

Blanks had been working for employer between six and seven years without material event before the happening of the events upon which this suit is grounded. At that time cleaning up was his job. That is, it was his duty to "throw(ing) up fittings", "and the other one moving pigs". This was a faulty material which could not be used in employer's production because of too much

iron therein. The material thus handled by Blanks as clean up man in the yard weighed from twenty-five pounds up. The "pig" important here weighed approximately seventy-five pounds.

On February 21, 1958, while lifting some of this material, Blanks experienced a sharp pain in his low back. His pain was such as to cause a short absence from work and a short confinement in the hospital. He returned to work about the middle of April, and was out for two or three weeks, part of this period being his vacation time.

On May 21st, while picking up a pig of about seventy-five pounds weight, he experienced a sharp pain in his back located "at about L4 & L5" of the vertebrae. He was immediately sent to the hospital, where from time to time he was examined by some eight or nine specialists in the medical field. Blanks himself did on June 17th become aware of a mass or lump in his abdomen. It was found to be a "cold abscess". This led to further diagnosis, and it was finally correctly found, and all so agree, that Blanks was suffering from tuberculosis of the back at the 4th and 5th vertebrae. An operation was performed for a fusion of L4 and L5 vertebrae.

The questions involved, as stated by the Trial Judge, are:

"(1). Was petitioner's existing tuberculosis aggravated by an injury?

"(2). If so, is the traumatic aggravation of an otherwise non-compensable disease (tuberculosis) compensable? and

"(3). If the disease was aggravated and is compensable did the aggravation cause his present disability and to what extent?"

The Court answered (1), (2) and (3) in the affirmative, and (4) that the permanent disability to the body as a whole is thirty (30%) percent. Judgment for temporary total disability and for permanent partial disability was then entered.

The insistence of employer is that it would be impossible for the tubercular condition or this pus sac to have been aggravated by trauma,—the injury occurring on May 21, 1958. It asserts that the doctors so testify and says an opposite conclusion is pure conjecture and speculation.

The insistence of Blanks is to the contrary. While the several doctors who testified are in disagreement in many respects, there is ample evidence furnished by some of them to support the insistence of Blanks and the finding of the Court.

Dr. Frere's testimony is that in the case of a lung condition and so forth, "if the infection is there, you can aggravate that sometimes", that from the x-rays of March 14 "it would be medically possible that the condition which he observed was latent" and that "by looking at the later x-rays which you hold in your hand" it was "medically possible for there to have been an intervening trauma at L-4 and L-5 activated a pre-existing tuberculosis which caused the condition which is shown in your x-rays. * * *" "If the infection is there, you can aggravate that sometimes". It is medically possible that "any trauma can aggravate any condition". The trauma

was the twisting of the body in lifting and throwing up the seventy-five pound "pig".

Dr. Bogart testified that while tuberculosis "is usually a progressive disease, sometimes it remains latent in the body" and that "trauma can aggravate it", and that a latent tuberculosis may flare up as a result of trauma. "And doctor, would it not be an aggravation * * * if it did pre-exist for a man to be on the job and pick up fifty pounds of steel or iron?" Answering this question in the affirmative, and responsive to the question, he said that the picking up of the iron and steel weighing fifty pounds would "be a trauma to that area which would aggravate it * * *" and "is it not *likely* that this trauma which he feels by pain is more likely to manifest itself in an aggravating condition than one which did not come to his attention? A. *Yes, I expect thats true."* (Emphasis is supplied.)

To Dr. Adams there was recited the evidence herein before recited. He was then asked if these conditions could have "activated and aggravated by the traumatic injury of May 21, 1958". He answered:

"I would say in my opinion that the process all along was probably a low grade latent tuberculosis, which might have been well, lit up or caused to be activated or re-activated by sustaining an injury. That is possible."

And that in the absence of trauma, an inactive low grade tubercular lesion "could be carried * * * without incident or clinical recognition throughout his life", and that under the evidence in this case such "is possible" had there been no trauma.

When Dr. Shelton was asked whether trauma can "aggravate tuberculosis of the bone", he replied: "Sure, yes." And futher this:

"Assuming, Doctor, that that cage of bacilli are lodged at L-4 and L-5 and that trauma occurred, Is there any possibility that that trauma could reactivate this latent disease?"

The doctor answered:—"Well, we've already said that we thought trauma could definitely aggravate it. There's no question about that."

Dr. Hampton testified that "I think that any trauma would aggravate any tuberculosis". He further testified that work which required a considerable amount of bending, and lifting material weights of metal and "felt a pain at L-4 and L-5", while so doing, "put increased pressure on that area and damaged it"; and he "would call that aggravation of a pre-existing lesion".

It was the testimony of Dr. Wood that the May 21st trauma could have aggravated the tubercular condition of the back at L-4 and L-5 whether prior thereto the tubercular disease there was active or inactive.

■ That an expert's opinion that a certain accident "could or might" produce the injury for which Workmen's Compensation is sought is competent is so well established by numerous cases as to seem to make it pedantic to cite authorities in support of the admissibility of such evidence. The brief of Blanks cites, among others, *Sanders v. Blue Ridge Glass Corp.*, 161 Tenn. 535, 33 S.W.2d 84. It would be idle to cite other decisions in support of this well established principle of law.

It is further in evidence that Blanks was apparently a strong man, thirty odd years of age, and worked for

employer here for more than six years. No difficulties, pain or suffering had been experienced by him previous to the two sharp pains in his back in February and May, respectively, in 1958, those pains immediately following, in the course of his duties, the lifting of materials of quite substantial weight.

■ Considering the testimony of Blanks, and that of these doctors, inescapable is the conclusion that substantial evidence supports the finding of the Trial Judge that Blanks' "condition was aggravated by trauma resulting from his occupation with the defendant company". So, that finding must be accepted as the truth in this Court.

■ Of course, the employer takes the employee as the former finds the latter "and assumes the risk of having his weakened condition aggravated or accelerated by his employment". See *Heron v. Girdley*, 198 Tenn. 110, 277 S.W.2d 402, cited in Blanks' brief, along with other cases.

The Trial Judge's Memo. called attention to the fact that "our Supreme Court has allowed recovery for aggravation of ulcer, heart conditions, cirrhosis of the liver, syphilis and cancer, none being classified * * * as an 'occupational disease' ". See *Martha White Bakeries v. Vance*, 204 Tenn. 491, 322 S.W.2d 206; *Storie v. Taylor Supply Company*, 190 Tenn. 149, 228 S.W.2d 94; *London & Lancashire Indemnity Company of America, etc. v. Starcher*, 202 Tenn. 278, 304 S.W.2d 87.

In *Boyd v. Young*, 193 Tenn. 272, 246 S.W.2d 10, it was found that a trauma received in the course of, and arising out of, claimant's employment aggravated a pre-existing cancer; therefore, that the workman's claim under the statute was valid. In that case, the employee, while pick-

ing up a box of cheese of substantial weight suddenly heard a pop in his back and experienced there a sharp pain.

■ Under the facts of the case at bar, as found by the Trial Court, upon substantial evidence this Court could not possibly hold the case at bar not compensable without further rejecting the holding in *Boyd v. Young,* supra, an action not permissible upon the part of this Court. Principle, precedent and statute all forbid such action by this Court.

■ By his assignments of error Blanks insists that no evidence supports the Trial Court's finding of a thirty (30%) percent disability to the body as a whole, and the extent of such permanent disability should have been found to be one hundred (100%) percent. Blanks is mistaken.

Dr. Houston Price, who saw Blanks fairly often; last on September 8, 1959, testified that "he's doing quite well", and that, in the opinion of the doctors, based on "bending x-rays of his back" "that it's fused" and that "he can return to work within a short length of time" and that the disability to his back, "I would think that his disability would be 15, 20 percent".

Dr. Wood testified that his examination of Blanks' back disclosed that his forward bending was limited to 40 degrees, though this doctor regarded Blanks as wholly incapacitated.

It was the testimony of Harry Johns, who was "supervisor employee benefits, industrial relations department", when asked if he "knows of any jobs down there that need to be filled by a man who can only bend 40 degrees

forward'' replied that ''we have a number of people down there working with those limitations, sir'', and that ''we make an effort to so classify them''.

A court room demonstration was given as to the movement of Blanks' body, his disability being fixed at 40%. The Trial Judge, of course, witnessed this demonstration and otherwise observed the movements of Blanks as Blanks moved around in the court room. There is, therefore, an abundance of proof to support the Court's finding of a thirty (30%) percent permanent partial disability with a fixing of the award in accord.

All assignments of error of each appellant are overruled and the judgment of the Circuit Court affirmed. The cause will be remanded for such further proceedings as are necessary in accordance with, and enforcement of, that Court's judgment and orders.