**Lindell HOLLINGSWORTH, et al.**

v.

**S & W PALLET COMPANY, et al.**

Supreme Court of Tennessee,
at Jackson.

May 10, 2002.

Marc A. Sorin and D. Scott Turner, Memphis, Tennessee, for the appellant, S & W Pallet Company.

Ricky L. Boren, Jackson, Tennessee, for the appellee, Lindell Hollingsworth.

Michael Alan Jaynes and Danny R. Ellis, Jackson, Tennessee, for the appellee, Blue Cross/Blue Shield of Tennessee.

Paul G. Summers, Attorney General and Reporter, and E. Blaine Sprouse, Assistant Attorney General, for the appellee, Second Injury Fund.

## OPINION

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., E. RILEY ANDERSON and WILLIAM M. BARKER, JJ. joined. JANICE M. HOLDER, J., not participating.

In this workers' compensation action involving the Second Injury Fund, the employee has suffered two disabling heart attacks. The first was non-compensable;

the trial court found the second compensable and awarded permanent and total disability benefits, with 40 percent of the disability allocated to the second heart attack. The court held that the Second Injury Fund would have been responsible for the remaining 60 percent of benefits, but the statute of limitations barred recovery against the Fund. The Special Workers' Compensation Appeals Panel affirmed the trial court's award of permanent total disability but held the employer liable for 100 percent of the benefit award. We granted a motion for review before the entire Supreme Court pursuant to Tenn.Code Ann. § 50–6–225(e)(5)(B) (1997). Primarily, we are asked to determine whether an employer's allegations of a pre-existing condition covered by the Second Injury Fund statute should be treated as an affirmative defense that is waived if not timely raised. We hold that the employer is not barred from attributing liability to the Fund after the running of the statute of limitations. Additionally, the employee asserts that the trial court erred in attributing 40 percent disability, rather than 100 percent, to the second heart attack. We hold that the evidence supports a finding that the second injury resulted in 40 percent disability. In regard to all remaining issues, we adopt the memorandum opinion of the Special Workers' Compensation Appeals Panel affirming the award of permanent total disability and remanding the cause for determination of temporary total disability.

## I. Facts and Procedural History

Lindell Hollingsworth began working for S & W Pallet Company (Pallet) in 1986. At the time of trial he was 44 years old. He had a limited education, having left school in the eighth grade, and his work history consisted almost exclusively of manual labor. In 1991, he suffered a non-compensable heart attack while at home.

After recovering, he returned to work at Pallet. In 1995, he underwent heart-by-pass surgery. After the surgery, he again returned to Pallet, performing light duty work at first and eventually resuming his regular duties.

On February 13, 1996, Hollingsworth arrived at work at approximately 7 a.m. The outside temperature was approximately 20 degrees. The doors to the building where he worked were kept open, and though there was a small heater in his work area, the temperature inside was about 40 degrees. Hollingsworth and another worker began stacking wood "runners," which weighed 30 to 40 pounds. After about 30 minutes, Hollingsworth began sweating heavily and having chest pains, and he knew he was having a heart attack. He told his supervisor of the chest pains, though he did not specifically state that he was having a heart attack. The supervisor allowed him to leave work. He then went to a local hospital, which transferred him to Jackson General Hospital. He remained there for 14 days. Thereafter, he was transferred to a transplant unit, where he received a heart transplant.

After the transplant, Hollingsworth's stamina decreased so significantly that he was unable to stand for more than an hour to an hour and a half. As a result, he was unable to return to work. On June 27, 1996, he filed a complaint for workers' compensation benefits. Pallet filed an answer on August 9, 1996, stating that any disability suffered by Hollingsworth arose out of some event other than a work-related accident. On August 20, 1996, it amended its answer to assert that Hollingsworth had not given sufficient notice of his injury. On September 27, 1997, Pallet filed another amended answer asserting that, at the time of the heart attack, Hollingsworth had a pre-existing disability that would limit Pallet's liability pursuant to the Second Injury Fund statute, Tenn. Code Ann. § 50–6–208(a) (1997). On November 5, 1997, Hollingsworth amended his complaint to state a claim against the Second Injury Fund (Fund), and at a subsequent hearing, the trial court ordered that the Fund be made a defendant. During the same period of time, Blue Cross/Blue Shield of Tennessee (Blue Cross) intervened to recover medical expenses it had paid in connection with Hollingsworth's heart attack.

A trial was conducted on April 22, 1998. Hollingsworth and Pallet presented extensive lay testimony, much of it concerning whether Pallet was aware that Hollingsworth's heart attack was work-related, and they also offered conflicting medical proof concerning causation.[1] Hollingsworth presented the depositions of Ronald Ira Weiner, M.D., and Pervis Milnor, M.D., both of whom testified that Hollingsworth's work and the exposure to cold were the direct causes of the heart attack. Weiner characterized the heart attack as "mild"; Milnor assigned Hollingsworth a 35 percent impairment rating but stated that 15 percent of the impairment pre-existed the second heart attack. Pallet offered the deposition of Dwight Clark, M.D., who testified that Hollingsworth's heart attack was not work-related.

After hearing the evidence, the trial court found that Hollingsworth was permanently and totally disabled. The court allocated 40 percent of Hollingsworth's disability to his second heart attack and held Pallet liable for that share of the judg-

1. In addition, Blue Cross presented the deposition of Mark Tucker, M.D., the chief medical officer for commercial programs with Blue Cross, as proof that the charges submitted in connection with Hollingsworth's treatment were appropriate and within the customary range for such services.

ment. The court stated that the Fund would have been liable for the remaining 60 percent of the judgment, but recovery against the Fund was barred by the statute of limitations. The trial court denied recovery of temporary total disability benefits, finding that the proof did not establish the duration of temporary total disability.

Pallet appealed to the Special Workers' Compensation Appeals Panel, which affirmed the trial court's finding of permanent total disability. It further concluded, however, that the Second Injury Fund statute created an "affirmative defense of pre-existing disabilities" and that Pallet waived this defense by failing to raise it within the statute of limitations period. The Panel then held that "the employer's liability is not limited when the recovery against the Second Injury Fund is not applicable," and consequently it held Pallet responsible for 100 percent of the judgment. The Panel also reversed the trial court's denial of temporary total disability benefits and remanded the cause for a determination of the period of temporary total disability.

Pallet filed a motion for review by the entire Supreme Court pursuant to Tenn. Code Ann. § 50–6–225(e)(5)(B) (1997), which we granted. Primarily, we are asked to determine whether allegations of pre-existing conditions covered by the Fund should be regarded as an affirmative defense that is waived if not timely raised by the employer. We hold that the employer is not barred from attributing liability to the Fund after the running of the statute of limitations. In addition, Hollingsworth asserts that the trial court erred in allocating 40 percent, rather than 100 percent, of the disability to the second injury. This issue was not addressed by the Panel. We hold that the evidence supports the allocation of 40 percent of the disability to the second injury, and accordingly we affirm. In all remaining issues raised by the parties, we adopt the findings of fact and conclusions of law made by the Special Workers' Compensation Appeals Panel.[2] In keeping with the Panel's recommendation, the cause is remanded to the trial court for the calculation of temporary total disability benefits.

## II. Standard of Review

■ The standard of review in workers' compensation cases is de novo upon the record, with a presumption of correctness applied to the trial court's findings of fact. Tenn.Code Ann. § 50–6–225(e)(2) (2000); *Spencer v. Towson Moving and Storage Inc.*, 922 S.W.2d 508, 509 (Tenn.1996). Where questions of law are presented, our review is de novo with no presumption of

---

2. The parties have raised a multitude of additional issues for our review:

Pallet asserts that the trial court erred in making all of the following findings: (1) Hollingsworth suffered an injury in the course and scope of his employment; (2) he gave proper notice; (3). he was permanently and totally disabled; (4) Blue Cross and Hollingsworth could recover medical and other expenses from Pallet; and (5) Pallet should be required to pay discretionary costs to both Hollingsworth and the Fund. We agree with the Panel's determination that the evidence does not preponderate against any of the above-listed findings of the trial court.

Hollingsworth asserts that the trial court erred in refusing to grant benefits for temporary total disability. We agree with the Panel that the preponderance of the evidence supports the existence of temporary total disability but that the cause should be remanded to the trial court so that the duration of temporary total disability may be established.

Accordingly, we adopt the Panel's findings of fact and conclusions of law regarding the above-listed issues. A copy of the relevant portions of the Panel's memorandum opinion is attached to this opinion as an appendix.

correctness. *Watt v. Lumbermens Mut. Cas. Ins. Co.*, 62 S.W.3d 123, 127–28 (Tenn. 2001); *Smith v. U.S. Pipe & Foundry Co.*, 14 S.W.3d 739, 742 (Tenn.2000).

### III. Analysis

#### A. Allegations of Pre-existing Conditions

We first address whether allegations of pre-existing conditions should be regarded as an affirmative defense which is waived unless raised by the employer within the statute of limitations. This issue requires us to interpret the Second Injury Fund statute, Tenn.Code Ann. § 50–6–208 (1997). In pertinent part, the statute states:

(a)(1) If an employee has previously sustained a permanent physical disability from any cause or origin and becomes permanently and totally disabled through a subsequent injury, such employee shall be entitled to compensation from the employee's employer or the employer's insurance company only for the disability that would have resulted from the subsequent injury ...; provided, that in addition to such compensation for a subsequent injury, and after completion of the payments therefor, then such employee shall be paid the remainder of the compensation that would be due for the permanent total disability out of a special fund to be known as the "second injury fund" therein created.

. . .

(4) Nothing in this section shall be construed to limit the employer's liability as provided by law for aggravation of preexisting conditions or disabilities in cases where recovery against the second injury fund is not applicable.

The statute is intended "to encourage the employment of persons with permanent physical disability by limiting to some extent the employer's workers' compensation liability. Limiting the exposure of the employer to the immediate consequences of the second injury encourages the employment of handicapped persons." *Burris v. Cross Mountain Coal Co.*, 798 S.W.2d 746, 749 (Tenn.1990) (citations omitted).

The Panel held that Pallet had waived the "affirmative defense of pre-existing disabilities" by failing to allege that claim until after the statute of limitations expired for claims against the Fund. The Panel noted that matters constituting an affirmative defense under Rule 8.03 [3] of the Tennessee Rules of Civil Procedure are waived if not specifically pleaded, and under Rule 9.01,[4] the issue of capacity to

---

**3.** Tenn. R. Civ. P. 8.03 provides:

In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute accord and satisfaction, arbitration and award, express assumption of risk, comparative fault (including the identity or description of any other alleged tortfeasors), discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation.

**4.** Tenn. R. Civ. P. 9.01 provides:

It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party. When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or to be sued in a representative capacity, he or she shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

be sued must be raised by specific negative averment. The Panel applied these provisions to conclude that Pallet waived the defense of pre-existing disability by raising the defense nineteen months after the accident, too late for the plaintiff to make a curative amendment to pursue a claim against the Fund. Turning then to subsection (a)(4) of the Second Injury Fund statute, the Panel held that Pallet would be responsible for 100 percent of Hollingsworth's injury because recovery against the Fund was "not applicable."

The Panel's conclusion, however, is not in keeping with prior decisions of this Court. Although these prior cases dealt with the timing of the employee's claim against the Fund rather than an employer's allegation of pre-existing disability, their reasoning nonetheless is instructive. In *Travelers Ins. Co. v. Austin,* for example, the employee did not amend his complaint to add the Fund as a defendant until nearly two years after his work-related injury. 521 S.W.2d 783, 785 (Tenn.1975). We held that the employee's claim against the Fund was not timely, stating that "the legislature of this State intended the time limitation on the filing of a [workers'] compensation action against the employer be equally applicable to a claim against the Second Injury Fund." *Id.* at 786. Thus, we held, the Fund was not liable for the portion of the judgment allocated to the employee's pre-existing disability. *Id.* at 786–87.

Despite holding that the claim against the Fund was time-barred, however, we did not hold the employer responsible for 100 percent of the judgment. Nor did we inquire whether the employer had timely raised allegations of pre-existing disability. Rather, we concluded that holding the employer responsible for the entire judgment would "ignore the clear statement of the legislature that where an employee has a claim against the Second Injury Fund, the employer and its insurance carrier are liable for payment of benefits 'only for the disability that would have resulted from the latter injury....'" *Id.* at 787 (quoting Tenn.Code Ann. § 50–6–208(a)(1)).

Essentially the same procedure was followed in *Pearson v. Day Int'l, Inc.,* 951 S.W.2d 375 (Tenn. Workers' Comp. Panel 1996). As in *Austin,* the employee in *Pearson* failed to timely file a claim against the Second Injury Fund, and the Court held that recovery from the Fund was time-barred. *Id.* at 377. Again, the Court limited the employer's liability to the disability allocated to the second injury, and it did so without inquiry into the timing, or indeed the existence, of any assertion of pre-existing disabilities by the employer. *Id.* at 377–78. Thus, in *Pearson* as in *Austin,* the existence of a pre-existing disability was regarded as creating a cause of action to be raised by the employee, not an affirmative defense to be raised by the employer.

In keeping with *Austin* and *Pearson,* we hold that the employer's right to limit its liability to the effects of the second injury in cases where the Second Injury Fund statute applies is not conditioned upon an assertion of the right within the statute of limitations. The Second Injury Fund statute creates a cause of action which must be asserted by the employee within the statute of limitations, but in the absence of a claim by the employee, the affirmative defense provisions of the Tennessee Rules of Civil Procedure do not restrict the employer's ability to claim limited liability under the statute. Moreover, we interpret subsection (a)(4) of the statute, which provides that the employer's liability shall not be limited in cases where recovery against the Fund is "not applicable," to refer to cases where the requirements set forth in subsection (a)(1) have

not been met. In the case under submission, recovery against the Fund was "applicable," for the statutory requirements were met, even though Hollingsworth failed to timely assert his claim. Consequently, Pallet may receive the benefit of the limited liability afforded by the statute. As stated in *Austin*, this conclusion best serves the legislative purpose of the Second Injury Fund statute: to encourage the hiring of the disabled by guaranteeing that employers will not be held liable for the effects of pre-existing conditions in cases of permanent total disability.

■ In sum, we hold that the responsibility of timely raising a claim against the Fund falls upon the employee, not the employer, and the employee's failure to assert such a claim does not foreclose an employer from claiming the benefit of limited liability afforded by the Second Injury Fund statute. Thus, Hollingsworth's failure to assert a claim against the Fund should not bar Pallet from receiving the benefits bestowed by the statute, even though Pallet raised the issue of pre-existing disability after the limitations period expired. The trial court properly limited Pallet's liability to the 40 percent disability allocated to Hollingsworth's second heart attack.

### B. Disability Allocated to the Second Injury

■ Regardless of our resolution of the prior issue, Hollingsworth asserts that Pallet should bear 100 percent of the liability in this case because the trial court erred in allocating 40 percent, rather than 100 percent, of the disability to the second injury.[5] Citing *Church v. N.B.C. Co.*,[6] Hollingsworth asserts that the trial court did not properly assess in isolation what percentage of disability would have been caused by the second heart attack without consideration of prior disability. *See also Allen v. City of Gatlinburg*, 36 S.W.3d 73, 77 (Tenn.2001) (holding that "the trial court must find what disability would have resulted if a person with no preexisting disabilities, in the same position as the plaintiff, had suffered the second injury but not the first"). Had it done so, he contends, the trial court would have concluded that the second heart attack was sufficient to cause permanent and total disability notwithstanding the effects of the first heart attack.

In its Order of Final Judgment, the trial court stated its finding of fact as follows: "60% of Plaintiff's permanent and total disability pre-existed his [second] heart attack ... and resulting heart transplant." We agree that it is, arguably, difficult to determine from this statement whether the disability attributable to the second heart attack was calculated without consideration of the prior heart attack, for the trial court did not definitively state that Hollingsworth would have incurred a 40 percent disability had he suffered the second heart attack but not the first. After carefully reviewing the record, however, we hold that an allocation of 40 percent disability to the second heart attack is supported by the evidence and does not necessitate reversal.

■ In so holding, we reiterate that our review of this issue is de novo with a presumption of correctness accorded to the trial court's findings of fact, unless the preponderance of evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(2) (2000). Under this standard, considerable deference must be granted where the trial

---

5. Because of its disposition of the case, the Panel did not address this issue in its memorandum opinion.

6. 224 Tenn. 658, 461 S.W.2d 387 (1970).

judge has seen and heard the witnesses, but "where the issues involve expert medical testimony and all the medical proof is contained in the record by deposition ... then this Court may draw its own conclusions about the weight and credibility of that testimony." *Krick v. City of Lawrenceburg,* 945 S.W.2d 709, 712 (Tenn. 1997).

Turning to the medical proof in this case, we note that Weiner characterized Hollingsworth's second heart attack as "mild." Likewise, Milnor essentially assigned Hollingsworth an impairment rating of 20 percent to the body as a whole for the second heart attack, for he stated that 15 percent of the total 35 percent impairment rating pre-existed the second heart attack. Moreover, although the medical proof indicated that Hollingsworth's second heart attack contributed to his need for a heart transplant, Weiner's testimony indicated that the severity of his pre-existing heart problems influenced his conclusion that a transplant was needed. The transplant, in turn, was responsible for much of Hollingsworth's disability. Had Hollingsworth been free from pre-existing conditions when the second heart attack occurred, the evidence suggests that a transplant likely would not have been necessary and his resulting disability would have been much less than 100 percent. With these considerations in mind, we conclude that the preponderance of the evidence supports a finding that Hollingsworth's second injury, without consideration of his pre-existing conditions, would have resulted in a 40 percent disability to the body as a whole. Accordingly, we affirm the decision that Pallet will be liable for 40 percent of the benefit award.

## IV. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed in all matters except the denial of temporary total disability benefits. As recommended by the Special Workers' Compensation Appeals Panel, the cause is remanded to the trial court for a determination of the period of temporary total disability. Costs are taxed equally to Lindell Hollingsworth and S & W Pallet Company.

## APPENDIX

**Excerpts from the Analysis section of the memorandum opinion of the Special Workers' Compensation Appeals Panel,**

*Hollingsworth v. S & W Pallet Co.,*

**No. W1998–00857–WC–R3–CV (Dec. 29, 2000)**

**(Ellis, Sp. J., joined by Holder, J., and Tatum, Sr. J.)**

(1) Did the evidence at trial preponderate against the court's finding the employee suffered an injury within the course and scope of his employment?

"Our approach has been to recognize the imprecision of proof of causation and hold that medical testimony that the normal physical exertion of employment could or might have caused the acceleration of a preexisting heart condition is sufficient to make out a prima facie case that the injury or death arose out of the employment." *King v. Jones Truck Lines,* 814 S.W.2d 23, 29 (Tenn.1991).

 It is a settled rule of decision in this jurisdiction that an employee's death or disability which results from a heart attack that is causally related to his employment is compensable under the worker's compensation act. Such an injury is considered as arising out of and in the course of employment even if prior to the attack the employee suffered from arteriosclerotic heart disease and the attack was

produced by only ordinary exertion and usual strain of the employee's work. *Ward v. Commercial Ins. Co.*, 213 Tenn. 100, 109, 372 S.W.2d 292, 296 (1963); *Coleman v. Coker*, 204 Tenn. 310, 312–313, 321 S.W.2d 540, 541 (1959); *Nashville Pure Milk Co. v. Rychen*, 204 Tenn. 575, 579, 322 S.W.2d 432, 434–435 (1958); *Patterson Transfer Co. v. Lewis*, 195 Tenn. 474, 478, 260 S.W.2d 182, 184 (1953). Moreover, it is equally well established that an employer takes the employee as he finds him, that is, with his defects and pre-existing afflictions. *Coleman v. Coker, supra.* In *Swift & Co. v. Howard*, 186 Tenn. 584, 591–92, 212 S.W.2d 388, 391–92 (1948), this Court said, in part:

> When an employer employs a workman he takes him as he is and assumes the risk of having a weakened condition aggravated by some injury which might not hurt or bother a perfectly normal, healthy person. If the injury is the proximate cause of disability, i.e., excites and aggravates a previous weakened condition then the employer is liable.

 Thus, in each case of this type, whether or not there actually was a causal connection between a heart attack and the employment is a question of fact to be resolved by the trial court. *Flowers v. South Central Bell Telephone Co.*, 672 S.W.2d 769, 770 (Tenn.1984).

 In the case at bar, there was sufficient medical proof before the trial court to find a causal connection between Hollingsworth's heart attack and his employment with Pallet.

(2) Did the employee give proper notice?

 In the present case it is undisputed that Hollingsworth told one of the Pallet co-owners that he was having chest pains and that he had to go to the doctor.

Hollingsworth's sister, Rita Fusilier, went to the Pallet office a few days after his heart attack and requested a workers' compensation form. The trial judge found that these two acts constituted proper notice under Tenn.Code Ann. § 50–6–201.

In *Powers v. Beasley*, 197 Tenn. 549, 276 S.W.2d 720 (1955), a witness saw an employee suffer a heart attack after carrying heavy items at work. The witness informed the employer of the situation. At trial, the employer challenged the notice by claiming that the witness did not suggest to him that the work contributed to the heart attack. After dispensing with this argument on other grounds, the Court held, "Moreover, such defect, if it be such, could not possibly have prejudiced employer, Powers. Hence, the statute does not permit him to take advantage of such supposed defect." *Id.* at 552, 276 S.W.2d at 721. Similarly, Pallet was not prejudiced by the form of notice in this case. We hold that Pallet received sufficient notice under § 50–6–201 of Hollingsworth's injury.

(3) Was the employee 100% disabled as a result of this heart attack?

 The law in Tennessee is that the assessment of a vocational disability is based on many specific factors, including the employee's age, education, skills, training, the availability of job opportunities, and the employee's capacity to work at the kind of employment available in the employee's condition. *See Cleek v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 774 (Tenn. 2000). In a thorough opinion, the trial judge found that Hollingsworth has difficulty standing, has no endurance, and exhausts easily upon minimal exertion. He has completed the eighth grade but has difficulty reading and writing. This Court holds that the proof does not preponderate against the trial court's ruling that Hollingsworth is 100% vocationally disabled.

[Sections 4–5, on use of allegations of pre-existing conditions as an affirmative defense, and 6–7, on the amount of disability attributed to the second injury, deleted]

(8) Was the employer responsible for outstanding medical bills to the plaintiff?

and

(9) Was the employer responsible to reimburse Blue Cross/Blue Shield?

Pallet contends that the trial court erred in finding Pallet responsible for outstanding medical, travel and prescription expenses totaling $32,109.43 and for reimbursing Blue Cross/Blue Shield in the amount of $295,631.99 for medical expenses. Pallet maintains that the court improperly relied on the testimony of Dr. Mark Tucker proving the reasonableness of these charges over appellant's objections.

■ The court found that Dr. Tucker was a board certified pediatrician. However, he has served for some time as the chief medical officer for commercial programs for Blue Cross and Blue Shield of Tennessee and, as such, is employed primarily in the review of medical expenses. It is in this capacity that Dr. Tucker reviewed the medical expenses in this case and found them to be reasonably appropriate and necessary. Tenn.Code Ann. § 50–6–226(a)(4) gives the trial judge the authority to rule on the reasonableness of medical charges. The record reflects that the original charges totaled $506,741.38 and Blue Cross paid its contractual share in the amount of $295,631.99. The trial court ordered Pallet to pay the lesser amount. The evidence does not preponderate against the trial court's findings on this issue.

(10) Should the employer be required to pay the discretionary costs of both the Second Injury Fund and the employee?

■ The last issue raised by Pallet is whether it should be required to pay the discretionary costs of Hollingsworth and the Second Injury Fund. Pursuant to Tenn. R. Civ. P. 54.04(2), costs are allowable to the prevailing party, in the trial court's discretion, against the losing party or parties. Pallet argues that, since Hollingsworth failed to sue the Second Injury Fund within the statute of limitations, the Second Injury Fund prevailed against Hollingsworth, and Hollingsworth should be responsible for the discretionary costs of the Second Injury Fund. We hold that the trial court acted within its discretion in ordering Pallet, the losing party in this case, to pay the discretionary costs of Hollingsworth and the Second Injury Fund, the prevailing parties.

(11) Is the employee entitled to temporary total benefits as a result of his heart attack and resulting heart transplant surgery?

The court ruled that there was temporary total disability, but the proof did not establish when it began and ended. "I know that there is temporary total disability in this case, but absent somebody showing me when this man goes back to work, I can't establish it upon a doctor's speculation that six months usually follows it. I know it's there."

■ Where the injury suffered by the employee results in a permanent disability, the period of temporary total disability is "cut off" when the employee has reached his maximum recovery. *See Gluck Brothers, Inc. v. Coffey*, 222 Tenn. 6, 13–14, 431 S.W.2d 756, 759 (1968). In *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn.1978), the court held that to make out a prima facie case of entitlement

to temporary total disability, an employee must prove that he was:

(1) totally disabled to work by a compensable injury; (2) that there was a causal connection between the injury and his inability to work; and (3) the duration of that period of disability. Temporary total disability benefits are terminated either by the ability to return to work or attainment of maximum recovery.

It appears that the totality of the circumstances established a period of temporary total disability, and the matter is remanded to the trial court to determine the same. Costs are taxed to Pallet.