

**FILED**

**August 24, 2015**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 1:31 PM



## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **Michael Smith,** | ) | **Docket No.: 2014-07-0029** |
| Employee, | ) | |
| v. | ) | **State File No.: 78307-2014** |
| | ) | |
| **Sun Products Corporation,** | ) | |
| Employer, | ) | **Date of Injury: July 28, 2014** |
| and | ) | |
| | ) | |
| **Zurich American Ins. Co.,** | ) | |
| Insurance Carrier. | ) | **Judge: Allen Phillips** |
| | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS AND DENYING TEMPORARY DISABILITY BENEFITS

---

THIS CAUSE came to be heard before the undersigned Workers' Compensation Judge on July 21, 2015, upon the Request for Expedited Hearing filed by Mr. Smith, the Employee, on May 28, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the Employer, Sun Products Corporation (Sun) is obligated to provide medical and/or temporary disability benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Mr. Smith is entitled to some of the requested benefits.

### ANALYSIS

#### Issues

1. *Whether Mr. Smith sustained an injury arising out of and in the course and scope of his employment with Sun;*

2. *Whether Mr. Smith provided proper notice of his alleged injury to Sun;*

3. *Whether Mr. Smith is entitled to medical benefits, specifically a panel of*

1

*physicians or payment of medical bills, for an alleged carpal tunnel injury;*
*and*

4. *Whether Mr. Smith is entitled to temporary disability benefits.*

## Evidence Submitted

The Court admitted into evidence the exhibits below:

1. Wage Statement (AWW: $590.84/ CR: $393.91)
2. Medical Records:
    - o Family Medical Clinic (Dr. James Naifeh);
    - o EMG Clinics of Tennessee;
    - o American Esoteric Laboratories; and
    - o Veteran's Administration Medical Center
3. Associate Incident Statement (three handwritten pages by Mr. Smith); and
4. Associate Incident Statement (dated September 29, 2014).

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD), February 23, 2015;
- Dispute Certification Notice (DCN), March 27, 2015; and
- Request for Expedited Hearing, May 28, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the evidence.

The following witnesses provided in-person testimony:

- Mr. Smith, and
- Ms. Gail Henderson.

## History of Claim

Mr. Smith is a forty-four year-old resident of Dyer County, Tennessee. He worked for Sun as a process operator for approximately three years beginning on March 10, 2011. In the past, Mr. Smith served in the United States Army for three years and in the Tennessee Army National Guard for "six or seven years."

Mr. Smith's job as a process operator required him to use rubber mallets and other tools, including a "jack hammer-like tool," to remove spilled material from the floor and

2

to dislodge soap powder from the sides of tanks.[1] He testified his job involved repetitive motion and other actions that caused "a lot of shock to my hands." Mr. Smith recalled an incident that occurred "sometime in the first year" of his employment where he noticed "tingling in the elbows and wrists" while swinging a hammer to dislodge impacted powder. Mr. Smith testified his "lead man," Thomas McIntosh, was present at the time of the incident. Mr. McIntosh purportedly called Mr. Smith a "whiner" and "different names," and "made fun of [Mr. Smith] for not being able to do his job." Mr. Smith and Mr. McIntosh did not talk any more about any injury. Sometime later, Mr. Smith noted a "knot" near his elbow. He mentioned this knot to Dr. Naifeh, whom he was seeing for other issues. Dr. Naifeh provided a tennis elbow strap, and Mr. Smith continued to work.

On May 2, 2011, Mr. Smith saw a rheumatologist at the VA Clinic, who diagnosed right-elbow bursitis. In the history, the provider noted Mr. Smith rested his elbow on a "hard surface" when driving. (Ex. 2 at 36.) The provider advised him to "avoid trauma to the bursa." *Id.* On May 11, 2011, Mr. Smith returned with a history of treating in 2010 for "fibromyalgia." (Ex. 2 at 35.) He again complained of elbow pain, a nodule on the elbow, and that "his hands [were] falling asleep when driving." He related that, "[t]his has been going on for years." *Id.* The provider diagnosed elbow bursitis, carpal tunnel syndrome, and fibromyalgia.

Mr. Smith returned to the VA Clinic on August 12, 2011, and the provider again diagnosed him with elbow bursitis. There is no mention of carpal tunnel. (Ex. 2 at 32.) By history, he had noted swelling in his elbow for "5 months," but it had "decreased w/in past 2 months." He specifically denied trauma. *Id.* at 31. On August 15, 2011, the VA Clinic fitted him with elbow cushions. *Id.* at 30. Mr. Smith wore the elbow cushions to work, and discussed them with Curtis Fowlkes, his lead person at the time. According to Mr. Smith, Mr. Fowlkes related that he "had had the same problem and that it took some time to heal."

Mr. Smith continued to perform the same job duties until March 2014. He testified he tried "on several occasions to apply for different jobs in the plant," and he told Mr. Fowlkes that he did not believe he could perform the physical requirements of his job.

Mr. Smith left Sun in March 2014 due to "anxiety" and "widespread body pain." He offered into evidence an undated "Associate Incident Report," which he presented to Sun before leaving. In the report, he detailed in his own handwriting what he described as "being a victim of a hostile work environment and a target of bullying on several occasions." (Ex. 3.) He noted his supervisors told him he was "incapable" of performing his job, and used other harsh and condescending language towards him. The actions were "too numerous to list on [the] form," but "the results of the actions have taken its toll on [his] mind and body." He noted anxiety, suicidal ideations, and "constant body aches and

---

[1] Sun is a manufacturer of detergent powder.

3

pains." His mental issues were of such severity that he "admitted himself" to the VA Medical Center in Memphis. *Id.*

Mr. Smith has not worked since March 24, 2014. The VA hospitalized Mr. Smith for post-traumatic stress disorder (PTSD) for an undefined period between March 24, 2014, and the alleged injury date of July 28, 2014. The VA records admitted into evidence do not include any documentation of this hospitalization, but instead are limited to the treatment for the previously discussed elbow condition in 2011.[2]

Mr. Smith introduced certain medical records of Dr. Naifeh beginning in January 2014. The records are handwritten and largely illegible. However, Dr. Naifeh noted complaints of anxiety, PTSD and fibromyalgia in various notes between January 2014 and July 2014. On July 17, 2014, Dr. Naifeh recommended an EMG/NCS test. EMG Clinics of Tennessee conducted the test on July 29, 2014, and it revealed moderately severe bilateral carpal tunnel syndrome. Mr. Smith testified the date of the EMG is when he first learned of the carpal tunnel diagnosis.[3]

Following the EMG, Mr. Smith advised "Brian,"[4] the safety supervisor, of the test results. Brian told Mr. Smith to "come by" Sun and complete another incident report. Mr. Smith did so, and Brian advised him to "put the date of the day we found out" about the carpal tunnel as the date of injury. Mr. Smith's wife completed the form, but did not fill in the injury date. Mr. Smith returned the form, "a couple of days later" but heard "nothing" from Sun regarding the report. Someone noted in the lower-right corner of the document that it was "dropped off at plant 9/29/14." (Ex. 4.)

In the report, Mr. Smith's wife wrote:

> On July 28th I was diagnosed w/ bilateral carpal tunnel and nerve damage. Doctor stated could be a direct of repeatedly being required to beat on surge bins with mallet. Pain started approx. 1 yr. after hire date. I attempted on several occasions to see doctors about this and was misdiagnosed until the above date.

*Id.* On cross-examination, Mr. Smith admitted he understood that company policy required reporting injuries when they happened. He further admitted to immediately reporting suffering a prior workers' compensation claim involving a foreign body in his eye. In the instant case, Mr. Smith stated he reported his carpal tunnel on July 28, 2014, after the EMG. He also stated he spoke with "his lead," referring to Mr. Fowlkes, in 2011

---

[2] Mr. Smith's counsel stated at the hearing that the VA records were extremely voluminous, over 1,200 pages in their entirety, and that she had condensed those offered as evidence to records bearing on the issues presented.

[3] Mr. Smith recalled the date of the EMG as being, incorrectly, July 28, 2014; hence, the stated date of injury in the PBD. The one-day discrepancy is immaterial to determination of the issues in this expedited hearing.

[4] "Brian" was later identified as Brian Foster.

regarding his upper-extremity problems, although he described the problem as tennis elbow because such was his diagnosis at the time. He was not aware in 2011 that the pain his elbow pain was work-related, but thought fibromyalgia could be causing the pain. He denied that a reference in the VA records to problems that had been "going on for years" referred to his elbow pain. He also denied that any activities outside of work required repetitive use of his arms. He made repeated attempts to contact the carrier regarding the status of his carpal tunnel claim.

Ms. Gail Henderson testified for Sun. She worked for Sun as the HR and Safety Manager. Prior to that time, Brian Mason was "over workers' compensation."

Ms. Henderson recalled "several conversations" with Mr. Smith regarding his carpal tunnel injury. Though she could not remember "exactly" when the conversations took place, she "would lean more toward July, August" 2014. She advised Mr. Smith to follow up with Mr. Mason. Mr. Smith contacted her because the carrier had not called him, and she followed up with the carrier. Ms. Henderson testified she questioned the "timing" of Ms. Smith's carpal tunnel claim, but did not elaborate further. She further stated that Sun hopes to "leave his position open" to see if he might be able to return to work.

Mr. Smith filed a PBD on February 23, 2015, seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation and the Mediation Specialist filed the DCN on March 27, 2015.

**Mr. Smith's Contentions**

Mr. Smith contends he remains an employee of Sun, but has not worked since March 2014 because of PTSD. He began experiencing problems with his hands as early as 2011, "a few months after he began work at Sun." In July 2014, he saw Dr. Naifeh, who ordered testing for CTS. After testing positive, he reported his injury to Sun. He has received no further treatment for his carpal tunnel condition since seeing Dr. Naifeh.

Mr. Smith argues that Ms. Henderson testified she actually knew he was "complaining of carpal tunnel syndrome" in July 2014, and thus had actual notice of his injury. No one rebutted Mr. Smith's testimony that he reported the injury to Mr. Foster. Ms. Henderson testified he told her of his claim. In *Hollingsworth v. S & W Pallet*, 74 S.W.3d 347 (Tenn. 2009), the Court found that "verbally" reporting an injury provided sufficient notice.

Mr. Smith has no medical proof because Sun has not provided a panel. Citing *Ball v. Regions Financial Corp.*, No. W2013-02454-SC-R3-WC, 2014 Tenn. LEXIS 705 (Tenn. Workers' Comp. Panel Oct. 2, 2014), Mr. Smith argues that the "nature and extent of an employee's injury and the issue of medical causation usually come to light in the

course of treatment." Even though he has no medical proof of causation, there is still no proof relating his carpal tunnel syndrome to any other "intervening" cause.

Mr. Smith is in no condition to work and the carpal tunnel contributes to that inability to work. Therefore, Sun owes him temporary disability benefits.

## Sun's Contentions

Sun contends that Mr. Smith failed to provide notice of his alleged injury until September 29, 2014, more than thirty days after the alleged injury date of July 28, 2014. Thus, Mr. Smith's claim fails because he failed to give Sun notice of the injury within thirty days of when he knew, or should have known, that he sustained an injury arising out of and in the course and scope of his employment. Ms. Henderson testified she did not receive the "form," referring to the Associate Incident Report, until September 2014.

Sun also contends that there is inadequate proof of causation. Mr. Smith cannot show his injury arose primarily out of the employment because he cannot show by a preponderance of the evidence that the carpal tunnel syndrome is 50% or more related to his work at Sun, considering all causes. The VA records indicate that the "problems" have been "going on for years." The burden of proving causation falls on Mr. Smith.

Finally, Sun contends Mr. Smith is not entitled to temporary disability benefits because he cannot show, by expert medical proof, either a causal relationship between his inability to work or the period of disability.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

6

*Factual Findings*

Mr. Smith reported a carpal tunnel injury to Sun on July 29, 2014, following an EMG study. Sun had knowledge of the alleged injury as of that date, or shortly thereafter. Sun has provided neither a panel nor medical treatment to Mr. Smith, and he has received all medical treatment to date from providers he sought on his own. There has yet to be a definitive opinion as to the cause of his carpal tunnel condition from any provider. Mr. Smith has not shown a causal relation between his inability to work and his carpal tunnel condition.

*Application of Law to Facts*

Because the issue of proper notice is outcome determinative of the other issues, the Court will address it first.

*Mr. Smith gave proper notice of his alleged carpal tunnel injury.*

Tennessee Code Annotated section 50-6-201(a)(1) provides that an injured employee "shall, immediately upon the occurrence of an injury, or as soon thereafter as practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury . . . within thirty (30) days after the occurrence of the accident." The notice should reasonably convey the idea that the employee has suffered an injury arising out of and in the course of his employment. *Masters v. Industrial Garments Mfg. Co., Inc.*, 595 S.W.2d 811, 816 (Tenn. 1980).[5] The reason for the notice requirement is to allow the employer an opportunity to investigate the alleged injury while evidence is available and to provide timely medical care to the employee. *Id.* at 815.

In this case, the pertinent language of the statute states that an employee must provide written notice, "as soon as practicable" to an employer "who has no *actual* notice" of an alleged injury. *See* Tenn. Code Ann. § 50-6-201(a)(1) (2014)(emphasis added). The Court finds Sun had actual notice of an alleged injury on the date Mr. Smith underwent the EMG study. As pointed out by counsel, his testimony that he told Mr. Brian Foster of the diagnosis the day of the EMG is unrebutted. Sun submitted no evidence to assail Mr. Smith's credibility on this point. Likewise, Ms. Henderson testified candidly and corroborated that Sun had actual notice before September 2014 that Mr. Smith claimed he had carpal tunnel. As such, the fact that Sun's received the incident report more than thirty days after the alleged injury date is immaterial.

---

[5] "Reliance on precedent from the Tennessee Supreme Court is appropriate unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

7

Tennessee Code Annotated subsection 50-6-201(b)(1) (2014) provides that the employee shall provide notice within thirty days of when he "knows or reasonably should know" that he has suffered a work-related injury. Here, Mr. Smith "knew" of his carpal tunnel condition when the EMG test results were conveyed to him on July 29, 2014. He then reported the injury to Sun that same day.

In this case, Sun points out that Mr. Smith complained of problems as early as 2011. However, the Court finds that any prior problems with his arms were not in the nature of carpal tunnel, or at least not definitively diagnosed carpal tunnel. Sun correctly points out that the VA records indicate, on May 2, 2011, that Mr. Smith had "problems," which had "been going on for years." (Ex. 2 at 35.) Even if this record refers to carpal tunnel, which is less than clear, the statute provides that Mr. Smith must either have known, or reasonably should have known, the condition was work-related. The only discussions of activities in the 2011 medical records pertain to the positioning of his arm while driving.

Of course, Tennessee law has long held that a gradually-occurring injury continues with every day that the employee continues to work. *Barker v. Home-Crest Corp.*, 805 S.W.2d 373, 376 (Tenn. 1991). Thus, even if Mr. Smith "knew" of his arms hurting on the job in 2011, he was not required to report the injury at that time as his injury "continued" every day he worked at Sun.

Likewise, the condition did not render Mr. Smith unable to work in 2011. *See* Tenn. Code Ann. § 50-6-201(b)(2) (2014)(an employee is not required to give notice of an injury until being rendered unable to work because of an injury he relates to his job). He worked for almost three more years, and the record is devoid of evidence that he attributed the *carpal tunnel* condition to his work in 2011; to the contrary, he thought he injured his elbow. It matters not whether he delayed advising Sun of his symptoms in the past; it matters that he reported it when he became aware of the diagnosis.

*Proof of injury.*

The notice provisions of the statute do not require an employee to present medical proof of an injury before an employer is required to provide medical benefits. Rather, the statute contemplates that an employer will provide medical care upon receipt of notice of the injury, and then, during the course of treatment and examination, the panel doctor will render an opinion on causation. *See* Tenn. Code Ann. § 50-6-102(13) (2014). Otherwise, an employee would be forced to seek medical care on his own to begin a claim, which the statute does not contemplate. Further, it is not required that Mr. Smith prove causation simply to report an injury. As he argues, Tennessee law is clear that "the nature and extent of an employee's injuries, and the issue of medical causation, usually come to light in the course of treatment of the employee's injuries." *Ball v. Regions Financial Corp.*, No. W2013-02454-SC-R3-WC, 2014 Tenn. LEXIS 705, at *15 (Tenn. Workers' Comp.

8

Panel Oct. 2, 2014) (citing *Quaker Oats v. Smith*, 574 S.W.2d 45, 48 (Tenn. 1978)).

Therefore, at this stage of the case, Mr. Smith is not required to establish through expert medical proof that his injury arose primarily out of the employment. He is, as stated previously, required to come forward with sufficient evidence from which the Court might find he is likely to prevail at a hearing on the merits. This Court so finds. However, this finding neither prevents Sun from producing countervailing evidence nor obviates Mr. Smith's burden of establishing his injury under the proper evidentiary standard at a full hearing. *See McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *4 (Tenn. Work. Comp. App. Bd. Mar. 27, 2015); *cf. McCall v. Natl. Health Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003).

*Medical benefits.*

Having found sufficient evidence that Mr. Boyd is likely to prevail on the merits regarding causation, the Court also finds that Sun must provide further evaluation of his carpal tunnel condition. Tennessee Code Annotated section 50-6-204(a)(1)(a) (2014) requires an employer to "furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident." The first requirement of furnishing medical treatment made necessary by accident is the provision of a panel of physicians by the employer. Tenn. Code Ann. § 50-6-204(3)(A)(i) (2014). The Court orders the provision of a panel to determine a complete and accurate diagnosis of Mr. Smith's condition and its cause.

Mr. Smith provided no evidence of any outstanding medical bills, and the Court cannot order payment for any charges incurred to date by Mr. Smith.

*Temporary disability benefits.*

Temporary total disability (TTD) is payable to an injured employee who is totally disabled to work by his injury and while he is recovering as far as the nature of the injury permits. *Cleek v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 776 (Tenn. 2000). Under Tennessee law, to establish entitlement to temporary total benefits, the employee must show he was (1) totally disabled to work by a compensable injury; (2) that there was a causal connection between the injury and his inability to work; and (3) the duration of that period of disability. *Id.* When an employee demonstrates the ability to return to work or attains maximum medical improvement, then TTD benefits are terminated. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978).

Temporary partial disability (TPD) refers to the time during which the injured employee is able to resume some gainful employment but has not yet reached maximum recovery. *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005). As with TTD, there must be

adequate proof of a causal connection between the injury and disability for an award of TPD.

To date, there is no medical opinion that Mr. Smith's carpal tunnel injury disabled him from working. Though he argues he is unable to work, his lay testimony, without corroborative expert testimony, does not constitute adequate evidence of medical causation. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, TN Wrk. Comp. App. Bd. LEXIS ___, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). Therefore, at this time, Mr. Smith has not established entitlement to temporary benefits.

Mr. Smith has come forward with sufficient evidence from which this Court concludes that he is likely to prevail at a hearing on the merits on the issue regarding the provision of a panel, but has not come forward with sufficient evidence for the other requested benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Sun, or its workers' compensation carrier, shall provide Mr. Smith with medical treatment for his injuries as required by Tennessee Code Annotated section 50-6-204 (2014), to be initiated by providing Mr. Smith with a panel of physicians as required for evaluation of the carpal tunnel condition and opining as to its causal relationship to his work at Sun. Mr. Smith or the medical providers shall furnish medical bills for this evaluation and/or treatment to Sun or its workers' compensation carrier.

2. Mr. Smith's claim against Sun and its workers' compensation carrier for the requested temporary disability benefits is denied.

3. This matter is set for an Initial (Scheduling) Hearing on December 9, 2015, at 10 a.m.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

10

5.  For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 24ᵗʰ day of August, 2015.**

_____
**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 731-422-5263 or toll free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2.  File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3.  Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4.  The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying

11

the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits and Denying Temporary Disability Benefits was sent to the following recipients by the following methods of service on this the 24th day of August, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Marianna Williams | | | X | molly@ashleyarnold.com |
| Nicole Grida | | | X | nicole.grida@zurichna.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

12